# Illinois Official Reports

## Appellate Court

---

**Rivera v. Bank of New York Mellon, 2021 IL App (1st) 192188**

---

| | |
|---|---|
| Appellate Court Caption | CARMEN RIVERA, Plaintiff-Appellee and Cross-Appellant, v. BANK OF NEW YORK MELLON and BAYVIEW LOAN SERVICING, LLC, Defendants-Appellants and Cross-Appellees (The City of Chicago, Intervenor-Appellee). |
| District & No. | First District, Fifth Division No. 1-19-2188 |
| Filed Modified upon denial of rehearing | April 30, 2021 July 30, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 16-M1-108289; the Hon. Raymond W. Mitchell and the Hon. Jerry A. Esrig, Judges, presiding. |
| Judgment | Reversed. |
| Counsel on Appeal | James V. Noonan and Ruth B. Sosniak, of Noonan & Lieberman, Ltd., of Chicago, and Stephen G. Daday and Julie A. Repple, of Klein, Daday, Aretos & O'Donoghue, LLC, of Schaumburg, for appellants. Colin Cameron and Scott Kane Stukel, of Cameron & Kane LLC, Christopher Tompkins, of Jenner & Block LLP, and Frank G. Avellone and Jon Raffensperger, of Lawyers' Committee for Better Housing, all of Chicago, for appellee. |

Mark A. Flessner, Corporation Counsel, of Chicago (Benna Ruth Solomon, Myriam Zreczny Kasper, Stephen G. Collins, and Jonathon D. Byrer, Assistant Corporation Counsel, of counsel), for intervenor-appellee.

Panel             JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.
Presiding Justice Delort and Justice Hoffman concurred in the judgment and opinion.

## OPINION

¶ 1      Plaintiff-appellee Carmen Rivera, a tenant residing at 1711 North Albany Avenue, Unit 1, in Chicago, filed suit against defendants-appellants Bank of New York Mellon (BONY) and Bayview Loan Servicing, LLC (collectively, the defendants), alleging that the defendants failed to comply with the ordinance commonly known as Keep Chicago Renting Ordinance (KCRO or ordinance) (Chicago Municipal Code § 5-14-010 *et seq.* (added June 5, 2013)), after purchasing the North Albany Avenue property at a judicial sale. Specifically, Ms. Rivera alleged that the defendants failed to offer her either relocation assistance or an extension of her lease agreement, as required by the ordinance. Following trial in the circuit court of Cook County, the court found in favor of Ms. Rivera but awarded her $16,500 less in damages than she was seeking.

¶ 2      The defendants appeal, arguing that (1) the KCRO is preempted by the Illinois Rent Control Preemption Act (Act) (50 ILCS 825/1 *et seq.* (West 2016)), (2) Ms. Rivera failed to demonstrate that she was a "qualified tenant" so as to qualify for relief under the KCRO, (3) the KCRO is unconstitutionally vague insofar as it does not require a tenant to prove that they are qualified before being entitled to relief, and (4) the trial court abused its discretion in awarding Ms. Rivera attorney fees. Ms. Rivera cross-appeals, arguing that she was entitled to an additional $16,500 in damages. For the reasons that follow, we reverse the judgment of the circuit court of Cook County.

¶ 3                              BACKGROUND

¶ 4      Ms. Rivera was a tenant residing at 1711 North Albany Avenue, Unit 1 (the property), beginning in August 2009. Her one-year written lease agreement expired in August 2010, and she continued her tenancy on a month-to-month basis upon expiration. Her landlord, Krysztof Adamczyk, defaulted on his mortgage, and the property was foreclosed and purchased by BONY at a judicial sale that was confirmed on December 7, 2015.

¶ 5      One month later, on January 9, 2016, Bayview, BONY's servicing agent, served Ms. Rivera with a notice informing her of her rights under the KCRO and also provided a tenant information disclosure form for her to complete. Ms. Rivera did not complete the form, but on February 5, 2016, through her attorney, she sent Bayview a settlement demand seeking payment of $10,600 in relocation assistance within 14 days. Ms. Rivera also included

information that she was a tenant paying $850 a month in rent after her initial written lease agreement of one year had expired on August 31, 2010.

¶ 6     On February 11, 2016, Bayview responded to Ms. Rivera's settlement demand with a request for additional information as to her qualified tenant status, including, "satisfactory evidence that a lease was in place." Ms. Rivera replied to Bayview's request for more information, stating that she had no legal requirement to provide additional information. Thereafter, Ms. Rivera increased her demand to $21,200 in relocation assistance.

¶ 7     Bayview's final communication to Ms. Rivera on March 14, 2016, explained that it was unable to determine if she was a qualified tenant based on the information she had provided, but stated that it was prepared to offer her a lease extension if she could show that she was a qualified tenant under the terms of the KCRO.

¶ 8     Ms. Rivera never responded to Bayview's March 14, 2016, communication. On April 5, 2016, she filed a complaint in the circuit court of Cook County against BONY and Bayview alleging violations of the KCRO. Ms. Rivera sought statutory damages of $21,200 (twice the relocation fee), $10,600 (the relocation fee), and attorney fees.

¶ 9     Ms. Rivera voluntarily vacated the property in July 2016, after which the defendants filed a motion to dismiss her pending complaint, alleging, in relevant part, that the KCRO under which Ms. Rivera was seeking relief, was preempted by the Act. The Act prohibits the regulation of the amount of rent charged for residential property in the state of Illinois (*id.* § 10), but the KCRO, which is a Chicago ordinance, requires an owner of a foreclosed property to offer qualified tenants either a $10,600 relocation fee or extend the tenant's lease with an annual rental rate that does not exceed 102% of their current rental rate. Chicago Municipal Code § 5-14-050(a)(1) (amended Apr. 15, 2015).[1] On November 8, 2016, the circuit court found that the Act preempted the KCRO and dismissed Ms. Rivera's complaint.

¶ 10    The trial court granted the City of Chicago (City) leave to intervene in the case. The City then sought to vacate the judgment and reconsider the dismissal order. Ms. Rivera likewise moved the trial court to reconsider its dismissal of her complaint. On April 25, 2017, the trial court, upon reconsideration, vacated the order of dismissal, finding that the KCRO's limitations on rent, while preempted by the Act, could be severed from the KCRO without running afoul of city council's intent and the underlying reason for the ordinance.

¶ 11    The defendants moved to reconsider the April 25 order in which the trial court had vacated its November 8, 2016, order. In a written order, the trial court denied the defendant's motion. The court's written order did not specifically identify the language that should be severed from the KCRO in order to bring it into compliance with the Act.

¶ 12    The defendants then answered Ms. Rivera's complaint, raising four affirmative defenses: (1) the KCRO was completely preempted by the Act, (2) Ms. Rivera waived any rights she had under the KCRO by vacating the premises after filing suit, (3) Ms. Rivera was not a qualified tenant, and (4) the KCRO was unconstitutionally vague. On Ms. Rivera's motion, the court struck the defendant's third affirmative defense that Ms. Rivera was not a qualified tenant. The court agreed with Ms. Rivera's argument that it was not an appropriate affirmative defense but rather an issue that Ms. Rivera would ultimately have to prove in order to obtain relief. The court allowed the remaining affirmative defenses to stand over Ms. Rivera's objection.

---

[1]In other words, the new owner may not raise rent more than 2% over the most recent year's rent.

¶ 13    The parties then filed cross motions for summary judgment and determination of major issues. Ms. Rivera sought a determination that the defendant was the property owner as defined under the KCRO and that it had failed to offer her the option of renewing her lease or receiving a relocation assistance fee. She further sought a ruling that she was a qualified tenant under the terms of the KCRO.

¶ 14    The defendants' motion for summary judgment argued that the KCRO was unconstitutionally vague and, further, that they did not need to make an offer to Ms. Rivera under the KCRO until she met her burden of proof of being a qualified tenant.

¶ 15    In August 2018, the court held a pretrial hearing on the pending motions and found as a matter of law that the KCRO was not unconstitutionally vague and that Ms. Rivera was a qualified tenant. The trial court further held that the KCRO did not require Ms. Rivera to prove that she was a qualified tenant before the defendants had to offer her the option of renewing her lease or receiving relocation assistance.

¶ 16    Trial commenced on August 20, 2018, on the issue of whether Ms. Rivera had been properly served with notice as required under the KCRO. Several months later, on March 5, 2019, the trial court issued its ruling and found that Ms. Rivera had been properly served with the notice under the KCRO and the tenant information disclosure form. The court further found that the defendants had the burden to determine whether Ms. Rivera was a qualified tenant under the ordinance. Finally, in terms of damages, the court found Ms. Rivera was entitled to two times the relocation fee under the ordinance in addition to the relocation fee itself. The court continued the matter for a hearing on Ms. Rivera's petition for $106,805 in attorney fees.

¶ 17    On September 17, 2019, after an evidentiary hearing, the court entered judgment in favor of Ms. Rivera for $98,420 in attorney fees, $21,200 in statutory damages, and $801.75 in related costs. The court did not include the additional $16,500 relocation fee sought by Ms. Rivera, prompting her to file a motion to modify the judgment and award her the additional $16,500. On October 22, 2019, the trial court denied Ms. Rivera's motion to award her an additional $16,500. Thereafter, this appeal and Ms. Rivera's cross-appeal followed.

¶ 18                                                    ANALYSIS

¶ 19    We note that we have jurisdiction to review this matter, as the defendants filed a timely notice of appeal following the entry of judgment and Ms. Rivera's cross-appeal was also timely. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. July 1, 2017).

¶ 20    The dispositive issue on appeal is whether the City's ordinance known as the KCRO is preempted by the Illinois statute known as the Act. Resolution of this issue turns on the language of the ordinance which we set forth here. The KCRO provides that an owner of a foreclosed rental property in the city of Chicago:

> "shall pay a one-time relocation assistance fee of $10,600 to a qualified tenant unless the owner offers such tenant the option to renew or extend the tenant's current rental agreement with an annual rental rate that: (1) for the first 12 months of the renewed or extended rental agreement, does not exceed 102 percent of the qualified tenant's current annual rental rate; and (2) for any 12-month period thereafter, does not exceed 102 percent of the immediate prior year's annual rental rate." Chicago Municipal Code § 5-14-050(a)(1) (amended Apr. 15, 2015).

On the other hand, the Act provides: "A home rule unit may not regulate or control the amount of rent charged for leasing private residential or commercial property. This Section is a denial and limitation of home rule powers and functions under subsection (g) of Section 6 of Article VII of the Illinois Constitution." 50 ILCS 825/10 (West 2016).

¶ 21    The Act also applies to non-home rule units, providing: "A unit of local government *** shall not enact, maintain, or enforce an ordinance or resolution that would have the effect of controlling the amount of rent charged for leasing private residential or commercial property." *Id.* § 5(a).

¶ 22    The trial court, upon reconsideration of the defendants' motion to dismiss pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2016)), ultimately concluded that, while the KCRO was preempted by the Act, the offending language could be severed from the KCRO without running afoul of the legislative intent underlying the Act. The trial court therefore denied the defendants' motion to dismiss Ms. Rivera's lawsuit based on section 2-619 of the Code. A motion to dismiss pursuant to section 2-619 admits the sufficiency of all well-pleaded facts but argues for the dismissal of the complaint based on an affirmative matter defeating the claim or avoiding its legal effect. *Janda v. United States Cellular Corp.*, 2011 IL App (1st) 103552, ¶ 83. Our standard of review of the court's decision on a section 2-619 motion is *de novo*. *Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill. 2d 558, 579 (2006).

¶ 23    On appeal, the parties initially dispute whether the KCRO imposes "rent control" as barred by the Act. Ms. Rivera and the City argue that "rent control," as traditionally understood, means setting rents below fair market rates. See Richard A. Epstein, *Rent Control and the Theory of Efficient Regulation*, 54 Brook. L. Rev. 741, 743-45 (1988). They further argue that the legislative history of the Act suggests that it was traditional rent control that the legislature sought to prohibit. In support of this argument, the City points to the difference in language between section 5 (applying to local government) and section 10 (applying to home rule units) of the Act. Specifically, section 5 prohibits any ordinance that has the *effect* of controlling rent (50 ILCS 825/5(a) (West 2016)), while section 10 prohibits any ordinance that *regulates or controls* rent (*id.* § 10). The City maintains that the "broader" language of section 5 may preempt the KCRO, but section 10 (applicable here) preempts only traditional rent control. We disagree. The distinction which the City attempts to make is pure sophistry. The difference in language between the sections does not lend support to the City's position.

¶ 24    In any event, only when there is ambiguity in statutory language does a court need to consider the legislative history of the statute or ordinance to discern its meaning. See *People v. Maggette*, 195 Ill. 2d 336, 348 (2001) ("Where the statutory language is clear, it will be given effect without resort to other interpretative aids."). The statute in question in this case provides that a home rule unit "may not regulate or control the amount of rent charged" for leasing residential property. Contrary to Ms. Rivera's contention, neither "regulate" nor "control" are ambiguous terms. "Regulate" is defined as "[t]o control (an activity or process) esp. through the implementation of rules." Black's Law Dictionary (11th ed. 2019). And "control" is defined as "[t]o regulate or govern." *Id.* It is evident that the KCRO clearly *regulates and controls* the amount of rent a landlord may charge for residential property—no more than 102% of a qualified tenants' current annual rent. As such, it clearly runs afoul of the Act, which prohibits such *control or regulation* by "home rule" bodies such as the City.

¶ 25    Ms. Rivera suggests that a landlord may avoid the effect of this control by declining to rent the property to a qualified tenant altogether and instead offer the relocation assistance fee. However, this reasoning strains logic because under that analysis, *no* rent control measure would ever be contrary to the Act because rent control, even as traditionally understood, does not *require* a property owner to rent the property. An owner is always free to decline to rent his property and, as such, avoid any restrictions on the amount of rent that can be charged.

¶ 26    In seeking a rehearing after the issuance of this opinion, Ms. Rivera refines this argument, noting that under the KCRO a landlord can continue to rent his property to *any* tenant at *any* rate he chooses, so long as he first pays the qualified tenant the relocation assistance fee. But she did not make this clarification in her brief or during oral argument in response to direct questions. As such, it is forfeited. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (points not raised in initial brief and argued for the first time in petition for rehearing are forfeited).

¶ 27    Having found that the Act preempts the KCRO, we must next consider whether the offending portion of the KCRO—setting the amount of rent a landlord may charge—can be severed from the remainder of the ordinance. The issue of severability is a question of statutory construction. *People v. Mosley*, 2015 IL 115872, ¶ 29. Where, as here, the statute or ordinance in question has a general severability clause, we must presume that the legislature intended the invalid provision of the ordinance or statute to be severable. *Best v. Taylor Machine Works*, 179 Ill. 2d 367, 460 (1997). In this case, while the KCRO does not include a severability clause, the Chicago Municipal Code provides:

> "If any part, section, sentence, clause or application of this Code shall be adjudged invalid, void and of no effect for any reason, such decision shall not affect the validity of the remaining portions of the titles, chapters, sections or other provisions of this Code, or their application to other circumstances." Chicago Municipal Code § 1-4-200 (added June 27, 1990).

¶ 28    But the existence of a severability clause is not conclusive as to whether the provision can survive severance. Rather, the presumption of severability may be overcome "if the legislature would not have passed the statute without the provision deemed invalid." *Best*, 179 Ill. 2d at 461. "To determine whether the legislature would have passed the statute without the provision declared invalid, the courts consider whether the legislative purpose or object in passing the act is significantly undercut or altered by the elimination of the invalid provisions." *Id.* In other words, if the valid and invalid provisions of an ordinance are so connected and dependent on each other such that " 'if all could not be carried into effect the [city council] would not pass the residue independently,' " then the act is not severable. *Waicekauskas v. Burke*, 336 Ill. App. 3d 436, 441 (2002) (quoting *Fiorito v. Jones*, 39 Ill. 2d 531, 540 (1968)).

¶ 29    Under ordinary circumstances, Illinois law permits foreclosure purchasers to evict tenants from the foreclosed property following a 90-day notice period. 735 ILCS 5/9-207.5(a) (West 2016). Against this backdrop, the purpose of the KCRO enacted by the Chicago City Council is:

> "to protect and promote the health, safety and welfare of its residents and mitigate the damaging effects on our communities of foreclosures, which individually are catastrophic for the families and tenants who lose their homes, and collectively can economically destabilize an otherwise healthy neighborhood, by causing building abandonment, excessive vacancy, declines in property values, and a perception of a neighborhood as being unworthy of investment, it is the purpose of this chapter and the

policy of the city to preserve, protect, maintain and improve rental property and prevent occupied buildings from becoming vacant after foreclosures." Chicago Municipal Code § 5-14-010 (added June 5, 2013).

In order to effectuate this purpose, the KCRO incentivizes purchasers of foreclosed property to retain tenants by excusing purchasers from paying a $10,600 relocation fee if they extend the qualified tenant's lease and raise rent *by no more than 102%* of the previous year's rent. Chicago Municipal Code § 5-14-050(a)(1) (amended Apr. 15, 2015).

¶ 30 As mentioned, the trial court declined to specify which portion of the KCRO it found inconsistent with the Act. However, our review of the KCRO reveals that removing all references to rental rates would cause the relevant remaining portion of the ordinance to read as follows: "[T]he owner of a foreclosed rental property shall pay a one-time relocation assistance fee of $10,600 to a qualified tenant unless the owner offers such tenant the option to renew or extend the tenant's rental agreement." Read as such, the ordinance removes the incentive for property owners to retain tenants. Thus, an owner after obtaining property as a result of foreclosure can avoid paying a relocation fee and still remove tenants by offering to extend a qualified tenant's lease at a prohibitive rental rate, knowing that the tenant is likely to refuse. This has the practical effect of displacing tenants and leaving buildings vacant and in disrepair, which is precisely what the KCRO was enacted to avoid. Thus, the (valid) relocation fee is inseparable from the (invalid) rent limitations. Therefore, it is reasonable to assume that the Chicago City Council would not have passed the KCRO without the rent limitation. In other words, rent control is an integral underpinning of the ordinance. For this reason, we conclude that the invalid portion of the KCRO is not severable from the remainder of the ordinance. Therefore, the KCRO is wholly preempted by the Act, and the trial court erred in denying the defendants' motion to dismiss on that basis.

¶ 31 Finally, because we conclude that that the KCRO is preempted by the Act, we need not address the remaining arguments on appeal or cross-appeal.

¶ 32 CONCLUSION

¶ 33 For the foregoing reasons, we reverse the judgment of the circuit court of Cook County.

¶ 34 Reversed.