2023 IL App (1st) 211513

No. 1-21-1513

Opinion filed March 31, 2023.

First Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| LEILA MENDEZ and ALONSO ZARAGOZA, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellants, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| THE CITY OF CHICAGO, a Municipal Corporation; | ) | No. 16 CH 15489 |
| and KENNETH J. MEYER, in His Official Capacity | ) | |
| as Commissioner of the City of Chicago Department | ) | |
| of Business Affairs and Consumer Protection, | ) | The Honorable |
| | ) | Cecilia A. Horan, |
| Defendants-Appellees. | ) | Judge Presiding. |

_____

PRESIDING JUSTICE LAVIN delivered the judgment of the court, with opinion.
Justices Hyman and Coghlan concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiffs, Leila Mendez and Alonso Zaragoza, both Chicago homeowners, sued the City

of Chicago and the commissioner of the Department of Business Affairs and Consumer

Protection (collectively, the City) claiming the shared housing ordinance, which was enacted in

2016, violated the Illinois Constitution. Specifically, they challenged the provisions relating to

home inspections, the primary-residence rule, excessive noise, and banning single night rentals. The circuit court granted the City's motion to dismiss these claims, and plaintiffs now appeal. We affirm.

¶ 2                                    BACKGROUND

¶ 3      We set forth only those facts pertinent to this appeal. The shared housing ordinance of the Chicago Municipal Code (Code) (Chicago Municipal Code § 4-14-010 *et seq.* (amended at Chi. City Clerk J. Proc. 20,269 (Sept. 9, 2020))) regulates the rental of homes in Chicago through websites like Airbnb and requires hosts to register and pay an annual fee to the Department of Business Affairs and Consumer Protection.[1] *Id.* § 4-14-020. A "shared housing unit" is "a dwelling unit containing 6 or fewer sleeping rooms that is rented, or any portion therein is rented, for transient occupancy by guests." *Id.* § 4-14-010. The ordinance regulates everything from what is required on the advertised website listing to ensuring that guests have clean towels and utensils, while also mandating that hosts notify the police of any criminal activity, egregious condition, or nuisance taking place in the shared housing unit. *Id.* § 4-14-040. It also prohibits guests from making excessively loud noise during the evening and early morning hours or committing illegal acts like drug trafficking and prostitution. *Id.* §§ 4-14-010, 4-14-050. Registered homes are subject to inspection every two years; however, the building commissioner has not yet issued such rules and regulations. *Id.* § 4-16-230. Further, relevant to this appeal, the

---

[1]In the general factual background, we have cited the 2020 ordinance, as it is more up-to-date and was passed during the litigation in this case. Where relevant in the analysis, we cite earlier iterations of the ordinance. Further, we note that a shared housing unit is one of three kinds of properties (along with vacation rentals and bed and breakfasts) classified as a "short term residential rental." Chicago Municipal Code § 4-13-100 (amended at Chi. City Clerk J. Proc. 20,269 (Sept. 9, 2020)). Plaintiffs also have challenged the vacation rental provisions of the Municipal Code, which in many respects mirror the shared housing unit provisions. See Chicago Municipal Code § 4-6-300 *et seq.* (amended at Chi. City Clerk J. Proc. 20,269 (Sept. 9, 2020)). Plaintiffs' complaint nonetheless focuses on the injury resulting from the inability to utilize shared housing. Consequently, our facts and analysis focus on those provisions.

ordinance generally requires that single family homes and duplexes or row houses be the host's "primary residence," meaning the place where the host lives most of the year (hereinafter, the primary residence rule).[2] *Id.* §§ 4-14-010, 4-14-060(d), (e). The Commissioner, however, may grant adjustments to the primary residence rule where it is an extraordinary burden to the host and the adjustment does not adversely impact the surrounding property owners or public. *Id.* § 4-14-060(d), (e); Chicago Municipal Code § 4-14-100(a) (added June 22, 2016). Finally, the shared housing rules ban single-night rentals. Chicago Municipal Code § 4-14-050(e) (amended at Chi. City Clerk J. Proc. 20,269 (Sept. 9, 2020)); see also *id.* § 4-14-050(f).

¶ 4    On November 29, 2016, plaintiffs filed a complaint against the City, raising various state constitutional claims as to the shared housing ordinance. Among them, plaintiffs alleged the inspection provision violated their right to be free from unreasonable searches and seizures and their right to privacy because they authorized the warrantless searches of their homes (count I). They also alleged the primary residence rule violated substantive due process because it was not rationally related to a legitimate governmental interest and the adjustment exception to the rule was impermissibly vague (count III). Finally, they alleged the noise rule violated substantive due process (count VI) insofar as it was vague and equal protection insofar as it arbitrarily discriminated against shared housing units by subjecting them to harsher restrictions than hotels and bed-and-breakfasts (count VII).

¶ 5    Plaintiff Mendez alleged that she was injured because the ordinance basically precluded her from using the Airbnb platform to rent out her home, as she was avoiding being "subject to

---

[2]" 'Single family home' means a building that: (i) contains one dwelling unit only; and (ii) is not attached to any other dwelling unit." Chicago Municipal Code § 4-14-010 (amended at Chi. City Clerk J. Proc. 20,269 (Sept. 9, 2020)). A " '[b]uilding containing two to four dwelling units' includes, but is not limited to, a duplex or row house consisting of two to four connected individual dwelling units." *Id.* ' "Primary residence' means the dwelling unit where a person lives on a daily basis at least 245 days in the applicable calendar year." *Id.*

warrantless searches and other restrictions the Ordinance places on shared housing units." Plaintiff Zaragoza alleged that he owns a home and a three-unit residential building in Chicago. Plaintiff Zaragoza would be injured because he rents out a room in his home as a shared housing unit that could be subjected to warrantless searches, as well as the excessive noise rules. He further alleged that the ordinance precluded him from using the Airbnb platform to rent out the unit in his three-unit building because it is not his primary residence. The two plaintiffs finally alleged they suffered injury as Chicago taxpayers. They asked for declaratory and injunctive relief, and the award of attorney fees.

¶ 6     Pursuant to the City's motion (see 735 ILCS 5/2-619.1 (West 2016)), the circuit court dismissed with prejudice counts I, VI, and VII.[3] The court also dismissed with prejudice plaintiffs' due process and equal protection challenges in count III but denied the motion as to the primary residence rule adjustment provision in that same count.

¶ 7     Plaintiffs filed an amended complaint, again challenging the primary residence rule and its exception as violating the Illinois Constitution (count II). That also was dismissed pursuant to the City's motion. Plaintiffs' second-amended complaint resulted in cross-motions for summary judgment. The City prevailed after the court determined that plaintiffs lacked an injury-in-fact and, contrary to the court's earlier finding, taxpayer standing; their claim also failed on the merits. Last, plaintiffs filed a third-amended complaint adding that the single-night ban violated separation of powers (count VIII) by unlawfully delegating legislative authority to administrative officials. Plaintiffs maintained they previously rented out their shared housing units for single

---

[3]We note that the trial court dismissed count I as unripe, which we consider a dismissal with prejudice. See *Pekin Insurance Co. v. St. Paul Lutheran Church*, 2016 IL App (4th) 150966, ¶ 85 (a dismissal on the grounds of ripeness is a dismissal with prejudice).

nights and would do so but for the ban. The circuit court granted the City's motion to dismiss the third-amended complaint, finding that plaintiffs lacked standing based on severability principles.

¶ 8    This appeal followed.

¶ 9                                    ANALYSIS

¶ 10    This appeal arises from an order granting defendants' combined motion to dismiss filed under section 2-619.1 of the Code of Civil Procedure. 735 ILCS 5/2-619.1 (West 2016). Section 2-619.1 of the Code allows a party to file a combined section 2-615 and section 2-619 motion to dismiss. *Henderson Square Condominium Ass'n v. LAB Townhomes, LLC*, 2015 IL 118139, ¶ 32. A section 2-615 motion to dismiss attacks the legal sufficiency of the complaint. *Carr v. Koch*, 2012 IL 113414, ¶ 27. In other words, a section 2-615 motion to dismiss tests the legal sufficiency of the complaint based on defects apparent on the face of the pleading. *Veazey v. Board of Education of Rich Township High School District 227*, 2016 IL App (1st) 151795, ¶ 32. The relevant inquiry is whether the allegations of the complaint, construed in the light most favorable to the plaintiff, set forth sufficient facts to establish a cause of action upon which relief may be granted. *Id.* In making this determination, all well-pleaded facts must be taken as true. *LAB Townhomes, LLC*, 2015 IL 118139, ¶ 61. A section 2-619 motion to dismiss, on the other hand, admits as true all well-pleaded facts, along with all reasonable inferences that can be gleaned from those facts, but asserts an affirmative defense or other matter that avoids or defeats the claim. *Id.* ¶ 34; *Carr*, 2012 IL 113414, ¶ 27; see also *Veazey*, 2016 IL App (1st) 151795, ¶ 23 (noting, this encompasses standing, which is an affirmative defense). We interpret the pleadings and supporting documents in the light most favorable to the nonmoving party. *LAB Townhomes, LLC*, 2015 IL 118139, ¶ 34. We review the trial court's granting of a motion to dismiss under

sections 2-615 and 2-619, as well as its determination on standing, *de novo*. *Illinois Ass'n of Realtors v. Stermer*, 2014 IL App (4th) 130079, ¶ 16.

¶ 11     Here, plaintiffs have moved for declaratory judgment, and thus, are bound to establish the elements of the cause of action: (1) a plaintiff with a legally tangible interest, (2) a defendant with an opposing interest, and (3) an actual controversy between the parties as to those interests. *Beahringer v. Page*, 204 Ill. 2d 363, 372 (2003). These same elements must be proven to establish standing in this context. See *Harris Bank of Roselle v. Village of Mettawa*, 243 Ill. App. 3d 103, 109 (1993); see also *Village of Chatham v. County of Sangamon*, 216 Ill. 2d 402, 419 (2005) ("Standing is a preliminary question in all declaratory judgment actions."). An "actual controversy" requires a showing that the underlying facts and issues of the case are not moot or premature, such that a court must pass judgment on mere abstract propositions of law, render an advisory opinion, or give legal advice on future events. *Beahringer*, 204 Ill. 2d at 374-75. Likewise, "interested parties" must possess a personal claim, status, or right which is capable of being affected, as opposed to a mere curiosity or concern for the controversy's outcome. *Harris Bank of Roselle*, 243 Ill. App. 3d at 109. Therefore, a plaintiff seeking to challenge the constitutionality of a municipal ordinance must have sustained, or be in immediate danger of sustaining, a direct injury as a result of the enforcement of the challenged ordinance. *Carr*, 2012 IL 113414, ¶ 28.

¶ 12     We further observe that municipal ordinances are presumed constitutional. *Fedanzo v. City of Chicago*, 333 Ill. App. 3d 339, 346 (2002). The party challenging the constitutionality of an ordinance has the burden of rebutting the presumption of validity and establishing a constitutional violation by clear and convincing evidence. *Village of Chatham*, 216 Ill. 2d at 417 (the burden of rebutting the presumption of validity rests with the party challenging the

constitutionality; a court should uphold an ordinance's validity if reasonably possible); *O'Donnell v. City of Chicago*, 363 Ill. App. 3d 98, 105 (2005). Further, where, as here, plaintiffs challenge an ordinance as facially invalid, they must establish there are no set of circumstances where the ordinance would be valid. *In re M.A.*, 2015 IL 118049, ¶ 39. The fact that a statute could be found unconstitutional under some circumstances does not establish its facial invalidity. *Id.* Consequently, a facial challenge to the constitutionality of a legislative enactment is the most difficult challenge to mount successfully. *Id.* We note that municipal ordinances are construed using the same rules that apply to statutes.[4] *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 306 (2008).

¶ 13    At the outset, the City contends plaintiffs lack standing to pursue their claims, some of which are not ripe. The City additionally maintains plaintiffs' constitutional claims fail on the merits. In other words, the City contends that the facts as pled in the complaints supplied rational bases for the ordinance provisions. We address these arguments regarding the dismissed counts each in turn.

¶ 14                    *Inspection Provisions (Count I, Original Complaint)*

¶ 15    Plaintiffs first contend the inspection provisions of the ordinance violate the Illinois Constitution's prohibition against unlawful search and seizure and are thus facially invalid. Article I, section 6, provides people

> "the right to be secure in their persons, houses, papers and other possessions against
>
> unreasonable searches, seizures, invasions of privacy or interceptions of communications
>
> by eavesdropping devices or other means. No warrant shall issue without probable cause,

---

[4]Given this rule and where relevant, we substitute the word ordinance for statute in the various legal citations.

supported by affidavit particularly describing the place to be searched and the persons or things to be seized." Ill. Const. 1970, art. I, § 6.

Plaintiffs note that courts largely construe this section consistent with the United States Supreme Court's fourth amendment jurisprudence. *Fink v. Ryan*, 174 Ill. 2d 302, 314 (1996). Yet, the City maintains we need not reach the merits of this claim because under the ordinance plaintiffs lack standing to raise count I. We agree.

¶ 16     Under the ordinance, the building commissioner can mandate inspection of any "shared housing unit *operated by a shared housing unit operator* \*\*\* at a time and in [a] manner, including through third-party reviews, *as provided for in rules and regulations promulgated by the building commissioner*."[5] (Emphases added.) Chicago Municipal Code § 4-16-230 (added at Chi. City Clerk J. Proc. 27,712 (June 22, 2016)). The ordinance defines a "shared housing unit operator" as a "person who has registered, or who is required to register, as the shared housing host of *more than one* shared housing unit." (Emphasis added.) *Id.* § 4-16-100. The City points out that neither plaintiffs Mendez nor Zaragoza has alleged they operate more than one shared housing unit. Rather, plaintiff Zaragoza rents out only one unit as a shared housing unit; plaintiff Mendez has ceased doing so due to the ordinance provisions. In short, plaintiffs are simply not currently subject to any inspection provisions. They thus lack standing to challenge the inspection provision of the ordinance because they are not interested parties, as required. They do not have a personal claim, right, or status that is capable of being affected. See *Harris Bank of Roselle*, 243 Ill. App. 3d at 109. They also have not sustained, and are not in immediate danger of sustaining, a direct injury as a result of the enforcement of the challenged ordinance. See *Carr*, 2012 IL 113414, ¶ 28; *cf. City of Los Angeles v. Patel*, 576 U.S. 409, 413-14 (2015)

---

[5]The time frame is at least once every two years for this. Chicago Municipal Code § 4-16-230 (added at Chi. City Clerk J. Proc. 27,712 (June 22, 2016)).

(noting that in challenging a city code as facially invalid under the fourth amendment, the respondents-plaintiffs stipulated they had been subjected to mandatory record inspections under the ordinance without consent or a warrant).

¶ 17    We also agree with the City that this claim is not ripe. To determine if an action is premature or unripe, courts evaluate the fitness of the issue for judicial decision during that point in time. *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 252 (2010). Here, the ordinance states the building commissioner can mandate inspection of a shared housing unit "as provided for in rules and regulations promulgated by the building commissioner." Chicago Municipal Code § 4-16-230 (added at Chi. City Clerk J. Proc. 27,712 (June 22, 2016)). Yet, the building commissioner has not promulgated any rules in connection with the inspections, making plaintiffs' claim premature. See *Beahringer*, 204 Ill. 2d at 372, 374-75; see also *Drayson v. Wolff*, 277 Ill. App. 3d 975, 979 (1996) ("Where a matter is contingent or uncertain, a court will not declare the rights of the parties to that matter."). Contrary to plaintiffs' contention otherwise, and as the City concedes, this clearly means there can be no inspections until there are implementing rules. The ordinance as written has no effect. As such, there is no actual controversy regarding the inspections, and also we decline to render an advisory opinion. *Cf. Miles Kimball Co. v. Anderson*, 128 Ill. App. 3d 805, 807 (1984) (finding an actual controversy where the defendant sought $150,000 from the plaintiff and referred to their contractual business dispute as a controversy).

¶ 18    We further observe that the fourth amendment permits "administrative searches" of hotel records, provided there are appropriate safeguards in place. See *Patel*, 576 U.S. at 420 ("The [United States Supreme] Court has held that absent consent, exigent circumstances, or the like, in order for an administrative search to be constitutional, the subject of the search must be afforded

an opportunity to obtain precompliance review before a neutral decisionmaker."). Yet, whether the administrative search exception to the fourth amendment applies in the shared housing context or whether the ordinance is facially valid must be left for another day.

¶ 19    In reaching this conclusion, we reject plaintiffs' contention that the absence of implementing rules for the ordinance warrants an injunction. Notably, after filing their complaint, plaintiffs withdrew their motion for a preliminary injunction as to count I because the City represented that it would not conduct the complained-of inspections absent the aforementioned rules. On appeal, the City concedes that the ordinance as written precludes inspections, and plaintiffs have not pointed to any violations in that regard by City officials, thereby obviating any need for an injunction. Plaintiffs also insist their claim is ripe, citing *Rush v. Obledo*, 756 F.2d 713, 721-22 (9th Cir. 1985). That case did not address ripeness but, rather, whether a California statute providing for warrantless administrative searches of family day care homes at *any time* was over broad for fourth amendment purposes. *Rush* is inapposite because the statute itself provided some guidance, whereas the ordinance at issue here does not yet do so. And, as the City notes, plaintiffs do not dispute that an agency's rules can properly limit the scope of a broadly worded ordinance.

¶ 20        *The Primary Residence Rule Exception (Count II, Amended Complaint)*

¶ 21    Plaintiffs next contend the adjustment exception to the primary residence rule violates substantive due process, which provides that "[n]o person shall be deprived of life, liberty or property without due process of law nor be denied the equal protection of the laws." See Ill. Const. 1970, art. I, § 2. Here, sections 4-14-060(d) and (e) generally prohibit shared housing hosts of single family homes and duplexes or row houses from utilizing Airbnb *unless* it is their primary residence. The ordinance lists several exceptions, such as for individuals on active

military duty and those that qualify for the commissioner's adjustment under section 4-14-100(a). See Chicago Municipal Code §§ 4-14-010, 4-14-060(d), (e) (added at Chi. City Clerk J. Proc. 27,712 (June 22, 2016)). Section 4-14-100(a)(2), in turn, states

> "[s]uch an adjustment may be approved only if, based on a review of relevant factors, the commissioner concludes that such an adjustment would eliminate an extraordinary burden on the applicant in light of unique or unusual circumstances and would not detrimentally impact the health, safety, or general welfare of surrounding property owners or the general public." *Id*. § 4-14-100(a)(2).

It then lists the factors as including "by way of example and not limitation" geography, population density, and the legal nature and history of the applicant, etc. *Id.*

¶ 22    Plaintiffs now argue the ordinance provides the commissioner with unconstrained authority to make exceptions to the primary residence rule without providing any objective guidance. They thus maintain the criteria is vague and contend the ordinance is facially invalid. The City responds that plaintiffs have no standing to challenge this exception because it is severable from the remainder of the ordinance. In other words, even if we struck the exception as unconstitutional, the rule requiring that single family homes and duplexes or row houses be the host's "primary residence" would still stand. See *id*. §§ 4-14-010, 4-14-060(d), (e). Plaintiffs counter that the City failed to raise this particular standing challenge in the court below, although they cite no legal authority in support of this counterargument. See *Lebron*, 237 Ill. 2d at 252-53 (a lack of standing is an affirmative defense, which the defendant forfeits if he does not timely plead it); see also Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (an appellant's argument must contain the contentions of the appellant and reasons therefor with citation to the authorities relied on).

¶ 23     We observe that the City challenged standing on other grounds in its motion to dismiss the complaint. However, as the City notes, plaintiff Mendez does not allege that the primary residence rule or the commissioner's adjustment precludes her from renting her home. She thus has no injury at all. While plaintiff Zaragoza alleged the primary residence rule precluded him from renting out a unit, on appeal he abandons that argument and challenges *only* the commissioner's adjustment exception. The fact that plaintiff Zaragoza challenged both provisions together before the circuit court arguably explains why the City did not raise severability at that time.

¶ 24     Regardless, we emphasize that forfeiture is a limitation on the parties, not on the court, and we may exercise our discretion to review an otherwise forfeited issue. *Deutsche Bank National Trust v. Peters*, 2017 IL App (1st) 161466, ¶ 12; *In re Estate of Henry*, 396 Ill. App. 3d 88, 94 (2009) (same). Likewise, we will not consider a constitutional question unless it is essential to the disposition of a case, *i.e.*, where the case cannot be determined on other grounds. This case can. Therefore, given the record before us, we proceed in our review of plaintiff Zaragoza's lack of standing due to severability and other fatal flaws. See *Henry*, 396 Ill. App. 3d at 94.

¶ 25     We first observe that the Code has a general severability clause:

> "If any part, section, sentence, clause or application of this Code shall be adjudged invalid, void and of no effect for any reason, such decision shall not affect the validity of the remaining portions of the titles, chapters, sections or other provisions of this Code, or their application to other circumstances." Chicago Municipal Code § 1-4-200 (added June 27, 1990).

While not conclusive, such clauses establish a presumption that the legislature, or in this case city council, intended for an invalid ordinance provision to be severable. *Northern Illinois Home Builders Ass'n v. County of Du Page*, 165 Ill. 2d 25, 48 (1995). This presumption will be overcome and the entire ordinance held unconstitutional if the legislative body would not have passed the ordinance with the invalid portion eliminated. *Id.* We consider whether the legislative purpose or object in passing the ordinance is significantly undercut or altered by the elimination of the invalid provisions. *Rivera v. Bank of New York Mellon*, 2021 IL App (1st) 192188, ¶ 28. The issue of severability thus involves a question of ordinance construction, in that we must ascertain and give effect to the legislative body's intent. See *People ex rel. Chicago Bar Ass'n v. State Board of Election*s, 136 Ill. 2d 513, 534 (1990).

¶ 26     In this case, the legislative intent is clear from the plain language of the ordinance, when read in context, and legislative commentary. First, the primary residence rule and details of the narrow exception appear in separate sections of the ordinance, thus supporting severability. Second, plaintiffs do not challenge the court's findings below that the City has a legitimate interest in local neighborhood preservation, continuity, and stability (see *Nordlinger v. Hahn*, 505 U.S. 1, 12 (1992)) and that the primary residence rule is rationally related to protecting that interest, including safeguarding residential neighborhoods in particular. As noted during the city council's committee meeting prior to the September 2020 ordinance amendment, the primary residence rule was intended to curb investor rentals in residential neighborhoods with single-family homes and townhouse walk-ups; as a matter of common sense, those residing in and more closely watching their homes a majority of the year have a greater stake in renting them to well-behaved and legally compliant guests. City of Chicago, *Virtual Committee on License and Consumer Protection*, Vimeo (Aug. 25, 2020), https://vimeo.com/showcase/6277263/video/

451235600 [https://perma.cc/HQH8-9HSN]. As one alderman observed, it is rare to hear about out-of-control parties at bed and breakfasts. *Id.* All this leads us to conclude that the primary residence rule takes primacy over its narrow, discretionary exception that plaintiffs now attack on appeal. See *Village of Chatham*, 216 Ill. 2d at 417 (we must uphold an ordinance's validity if reasonably possible); *cf. Commercial National Bank of Chicago v. City of Chicago*, 89 Ill. 2d 45, 75-76 (1982) (severability will not be found if it broadens the scope of the ordinance or alters it in a manner contrary to the legislative intent).

¶ 27    Therefore, the primary residence rule and its narrow exception are not so mutually connected or interdependent on each other that the city would not have passed the former without the latter. See *Northern Illinois Home Builders Ass'n*, 165 Ill. 2d at 48-49; *Rivera*, 2021 IL App (1st) 192188, ¶ 28. In short, they are severable. Thus, even if plaintiff Zaragoza established the exception as invalid, the primary residence rule—which he does not challenge on appeal—remains valid and still prevents him from obtaining relief. See *Village of Chatham*, 216 Ill. 2d at 423 (fundamentally, a court will not determine the constitutionality of an ordinance provision that does not affect the parties to the cause under consideration).

¶ 28    Even severability aside, we note that it is plaintiff Zaragoza's burden as the appellant to affirmatively establish the errors on review. See *Healy v. Bearco Management, Inc.*, 216 Ill. App. 3d 945, 958 (1991); see also *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 131-33 (1976) (the burden of persuasion remains with the appellant despite the appellee's failure to file a brief). Likewise, he must establish a direct injury as a result of enforcing the challenged ordinance. *Carr*, 2012 IL 113414, ¶ 28. Yet, in his opening brief plaintiff Zaragoza failed to argue that invalidating the exception to the rule also invalidates the rule. Therefore, he has not sustained his burden on appeal or established an injury leading to

recovery. See *LAB Townhomes, LLC*, 2015 IL 118139, ¶ 61; see also *In re M.I.*, 2013 IL 113776, ¶ 32 (a party must be directly affected by the attacked provision and in danger of sustaining an injury as a result of the enforced provision); *Morr-Fitz, Inc. v. Blagojevich*, 231 Ill. 2d 474, 493 (2008) (noting, we must affirm the circuit court's order where it appears that plaintiffs can prove no set of facts that would entitle them to recovery). For that reason, alone, his claim fails.

¶ 29    Additionally, regarding plaintiff Zaragoza's vagueness challenge to the ordinance, our supreme court has made clear that a plaintiff has standing to challenge the constitutionality of an ordinance *on its face* only if the challenged language implicates first amendment rights. *Owens v. Department of Human Rights*, 403 Ill. App. 3d 899, 927 (2010) (citing *People v. Jihan*, 127 Ill. 2d 379, 385-86 (1989)); see also *People v. Izzo*, 195 Ill. 2d 109, 112 (2001) (same). This ordinance section does not implicate first amendment rights. As such, plaintiff Zaragoza can only argue the ordinance is vague *as applied to himself*. See *Owens*, 403 Ill. App. 3d at 927; *O'Donnell*, 363 Ill. App. 3d at 105. Yet, he has not done so, and nor can he since he has not exhausted the relevant administrative remedies. The City noted this much in its motion to dismiss the complaint.

¶ 30    "If the agency is vested by the legislature with the authority to administer the statute, declaratory relief is not available; judicial interference must be withheld until the administrative process has run its course." *Beahringer*, 204 Ill. 2d at 375. Courts apply the exhaustion doctrine to declaratory judgment actions, and moreover, this doctrine applies even when the grievance involves a constitutional violation. *Id.* at 374-75. In this case, the City, via its home-sharing ordinance, vested the Department of Business Affairs and Consumer Protection and its commissioner with the authority of determining whether an applicant qualifies for the adjustment exception to the primary residence rule. Chicago Municipal Code § 4-14-100 (added June 22,

2016); see also Chicago Municipal Code § 2-14-010 (amended Feb. 15, 2012) (establishing the City's Department of Administrative Hearings). If the commissioner denies the adjustment application, the applicant can request an evidentiary hearing that is then subject to judicial review. Chicago Municipal Code § 4-14-100(c) (added June 22, 2016). Yet, there is no evidence that plaintiff Zaragoza has fully availed himself of that administrative remedy, and he has not adequately pled the exhaustion of administrative remedies.[6] Thus, plaintiff Zaragoza's claim is not legally cognizable.

¶ 31          *The Single-Night Rental Ban (Count VIII, Third-Amended Complaint)*

¶ 32    Plaintiffs next contend that the ban against single-night rentals violates separation of powers, thereby violating the Illinois Constitution (Ill. Const. 1970, art. IV, § 1), because the ordinance improperly delegates to the commissioner and police superintendent the public-policy decision of whether, when, and under what conditions the single-night rental of shared housing units will be lawful in Chicago. Plaintiffs maintain that this gives the commissioner and police superintendent arbitrary authority and unguided discretion. Plaintiffs argue they previously rented out shared housing units for single nights and would do so now but for the ban.

¶ 33    The City maintains, as it did below, that plaintiffs lack standing based on severability principles. The single-night rental ban specifically provides:

---

[6]The record shows that several years after filing his initial complaint, plaintiff Zaragoza requested the commissioner's adjustment to allow the operation of a shared housing unit in his otherwise ineligible building, and the commissioner denied his application for adjustment. Plaintiff Zaragoza noted these facts in the third-amended complaint. Yet, on appeal, plaintiff has not demonstrated that he further pursued the exhaustion of remedies, and regardless, his claim involving the adjustment exception was dismissed with prejudice long before his third-amended complaint. We acknowledge that while "[a]n aggrieved party may seek judicial review of an administrative decision without complying with the exhaustion of remedies doctrine where a statute, ordinance or rule is attacked as unconstitutional on its face" (*Morr-Fitz, Inc.*, 231 Ill. 2d at 498)—it is clear that in this case plaintiff cannot really bring a facial challenge to the ordinance provision.

"It shall be unlawful for any shared housing host to rent any shared housing unit, or any portion thereof, for any period of less than two consecutive nights *until such time that the commissioner and superintendent of police determine that such rentals can be conducted safely under conditions set forth in rules jointly and duly promulgated by the commissioner and superintendent*." Chicago Municipal Code§ 4-14-050(e) (amended at Chi. City Clerk J. Proc. 20,269 (Sept. 9, 2020)).

See also *id.* § 4-14-050(f).

¶ 34    While plaintiffs take issue with the latter portion of the ordinance, the City maintains it is of no matter given the single-night ban clause. The City argues that the text of the ordinance, its purpose, and legislative history strongly support severability. The circuit court agreed, concluding that even if the italicized clause identified above were invalidated, the ordinance still would preclude single night rentals, and thus, plaintiffs' injury would not be redressed. The circuit court thus held the single-night ban was severable. We agree.

¶ 35    The City's legislative history reveals that this ban passed in 2020 during the pandemic due to the proliferation of party houses. See *Virtual Committee on License and Consumer Protection*, *supra*. It was intended to be a public health safety measurement. The aldermanic committee meeting reported that even before then, single-night rentals had a history of presenting problems for neighbors and police, as they also attracted parties and disturbances. See *id.* Given those facts, it is clear the City would have passed the first clause even absent the allegedly invalid second clause of the sentence. See *People ex rel. Chicago Bar Ass'n*, 136 Ill. 2d at 533 (noting, an entire act will be held unconstitutional if legislature would not have passed the statute absent the invalid portion). Plaintiffs challenge this determination, claiming that the mayor originally presented a text containing only the single-night ban. This fact does not weaken

our conclusion, but strengthens it. The single-night ban was evidently the first and foremost important part of the provision. Also, plaintiffs have not pointed to evidence demonstrating why the second clause was added or showing the ban would not have passed. Plus, passing the ban alone (absent the second clause) would not have precluded the city council itself from later reconsidering the ban and amending the ordinance, itself, as it has done multiple times since passing the original in 2016. Plaintiffs, in arguing that that the second clause was integral, mostly rely on newspaper articles, which are inapposite and do not support their claims. See *Morel v. Coronet Insurance Co.*, 117 Ill. 2d 18, 24-25 (1987) (noting, the statements of legislators outside of legislative debates are not meaningful evidence of legislative intent).

¶ 36     For the stated reasons, we conclude that the single-night rental ban and administrative exception are not so mutually connected or interdependent on each other that the city would not have passed the former clause without the latter. See *Northern Illinois Home Builders Ass'n*, 165 Ill. 2d at 48-49; *Rivera*, 2021 IL App (1st) 192188, ¶ 28. This is also consistent with the presumption stemming from the City's severability clause. See Chicago Municipal Code § 1-4-200 (added June 27, 1990). Further, when construing an ordinance, we must uphold its validity if reasonably possible. *Village of Chatham*, 216 Ill. 2d at 417.

¶ 37                    *The Noise Rule (Counts VI and VII, Original Complaint)*

¶ 38     Last, plaintiffs contend the noise rule violates substantive due process (count VI), insofar as it is vague, and equal protection, insofar as it arbitrarily discriminates against shared housing units by subjecting them to harsher restrictions than hotels, bed-and-breakfasts, and other rental entities (count VII). They thus raise a facial challenge, arguing there are no set of circumstances under which the ordinance would be valid. See *Patel*, 576 U.S. at 417. The City responds that

this challenge fails on the merits because the noise rule is not vague in all applications, nor does it arbitrarily discriminate against shared housing units.

¶ 39    An ordinance satisfies due process if it bears a rational relationship to a legitimate governmental interest and conveys a sufficiently definite warning and fair notice as to what conduct is proscribed. *Fedanzo*, 333 Ill. App. 3d at 347; *O'Donnell*, 363 Ill. App. 3d at 106. Whether notice is adequate is measured by common understanding and practices. *O'Donnell*, 363 Ill. App. 3d at 106. Similarly, as to an equal protection claim, a legislative body may differentiate between similarly situated people if there is a rational basis for doing so. *Jenkins v. Wu*, 102 Ill. 2d 468, 477 (1984).

¶ 40    The ordinance prohibits "excessive loud noise," meaning "any noise, generated from within or having a nexus to the rental of the shared housing unit, between 8:00 P.M. and 8:00 A.M., that is louder than average conversational level at a distance of 100 feet or more, measured from the property line of the shared housing unit."[7] Chicago Municipal Code § 4-14-080(c)(2) (added at Chi. City Clerk J. Proc. 27,712 (June 22, 2016)); see also Chicago Municipal Code § 4-14-010 (amended at Chi. City Clerk J. Proc. 20,269 (Sept. 9, 2020)) (amending "excessive loud noise"). The 2016 ordinance provided that should the shared housing unit be the site of

---

[7]We rely on the 2016 version of "excessive loud noise," as plaintiffs challenged that provision, and the relevant count was dismissed with prejudice prior to the 2020 amendments. The ordinance was amended to state: " 'Excessive loud noise' means: (1) any sound generated between the hours of 8:00 p.m. and 8:00 a.m. from within the shared housing unit or on any private open space having a nexus to the shared housing unit that is louder than average conversational level at a distance of 100 feet or more, measured vertically or horizontally from the property line of the shared housing unit or private open space, as applicable; or (2) any sound generated on the public way immediately adjacent to the shared housing unit, measured vertically or horizontally from its source, by any person having a nexus to the shared housing unit in violation of Section 8-32-070(a); or (3) any sound generated between the hours of 8:00 p.m. and 8:00 a.m. that causes a vibration, whether recurrent, intermittent or constant, that is felt or experienced on or in any neighboring property, other than a vibration: (i) caused by a warning device necessary for the protection of the public health, safety or welfare; or (ii) caused in connection with the performance of emergency work within the shared housing unit by the shared housing host or such host's agent; or (iii) subject to an exception or exclusion under Section 8-32-170." Chicago Municipal Code § 4-14-010 (amended at Chi. City Clerk J. Proc. 20,269 (Sept. 9, 2020)).

excessively loud noise violations on three or more occasions, the host's registration could be suspended or revoked; with the 2020 amendment, it is now two separate incidents. Chicago Municipal Code § 4-14-080(c)(2) (added at Chi. City Clerk J. Proc. 27,712 (June 22, 2016)); Chicago Municipal Code § 4-14-080(c)(2) (amended at Chi. City Clerk J. Proc. 20,269 (Sept. 9, 2020)).

¶ 41     We conclude the ordinary everyday meaning of the words "louder than average conversational level," together with the time limits and distance measurements, provide adequate notice to a reasonable person of average intelligence as to what the ordinance prohibits. See *Grayned v. City of Rockford*, 408 U.S. 104, 110-12 (1972). It ensures people will act accordingly and authorities will not arbitrarily enforce the ordinance. See *Wilson v. County of Cook*, 2012 IL 112026, ¶ 21. Contrary to plaintiffs' contention otherwise, the ordinance thus provides sufficient notice and standards to comport with due process. As the circuit court observed, even a child understands the difference between inside and outside voices. The ordinance clearly aims to proscribe the yelling, screaming, and loud laughter that often accompanies a party and wafts over to neighboring properties. It also reasonably proscribes this conduct during the evening hours when, due to such excessively loud noise, the average Chicagoan in a residential high rise or neighborhood might be precluded from sleeping and getting up the next morning to go about their day. Notably, the ordinance does not proscribe just *any* noise, such as a baby crying or garage door opening, as plaintiffs would have us believe. Rather, it proscribes "excessive loud noise," and with the limiting language and parameters, it adequately delineates a nuisance. See *Mister Softee of Illinois, Inc. v. City of Chicago*, 42 Ill. App. 2d 414, 420 (1963) (noting, it is well established that an ordinance should be given the most reasonable interpretation that will remove it farthest from constitutional infirmity); *cf. City of Aurora v. Navar*, 210 Ill. App. 3d

126, 131, 134 (1991) (concluding the ordinance, proscribing "[a]ny commercial activity audible from adjacent premises" a nuisance, was impermissibly vague and thus unconstitutional (internal quotation marks omitted)). It is eminently reasonable.

¶ 42   Regardless, an act is not unconstitutionally vague merely because one can conjure up a hypothetical which brings the meaning of some terms into question. *Gem Electrics of Monmouth, Inc. v. Department of Revenue*, 183 Ill. 2d 470, 481 (1998). Likewise, due process does not mandate absolute standards or mathematical precision. *Izzo*, 195 Ill. 2d at 114. As the City notes, other noise ordinances providing much less distinct definitions have been upheld as constitutional. See *Kovacs v. Cooper*, 336 U.S. 77, 79 (1949) (" 'loud and raucous' " noises); *Dube v. City of Chicago*, 7 Ill. 2d 313, 322-25 (1955) (" 'noises disturbing the peace and comfort of occupants of adjacent premises' "); *City of Chicago v. Reuter Bros. Iron Works, Inc.*, 398 Ill. 202, 206-07 (1947) (noises of " 'disagreeable or annoying nature' "); *Mister Softee of Illinois, Inc.*, 42 Ill. App. 2d at 420 (any noise which was "distinctly and loudly audible" on a public street).

¶ 43   Plaintiffs also complain that the restrictions imposed on shared housing are unreasonably harsher than those related to hotels, bed-and-breakfasts, and other rental entities. Plaintiffs do not support their claim on appeal with appropriate citation to legal authority. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (an appellant's argument must contain the contentions of the appellant and reasons therefor with citation of the authorities relied on). Moreover, as a threshold matter, plaintiffs have failed to plead sufficient facts to establish that shared housing entities are similarly situated to hotels, bed and breakfasts, or long-term rentals. See *M.A.*, 2015 IL 118049, ¶ 26 (noting that "[w]hen a party bringing an equal protection claim fails to show that he is

similarly situated to the comparison group, his equal protection challenge fails"). Their conclusory allegations are insufficient.

¶ 44    Even taking them as true, however, we can conceive of a rational basis for the different treatment of the entities. The ordinance thus passes constitutional muster even though in practice it might result in some inequality. See *Strauss v. City of Chicago*, 2021 IL App (1st) 191977, ¶ 46, *affirmed on other grounds*, 2022 IL 127149. The parties do not dispute the findings of the circuit court in its judgment disposing of the parties' cross-motions for summary judgment. There, the court noted that hotels and bed-and-breakfasts have personnel on-site to address noise disturbances, unlike in shared housing situations where some owners are not even present at all. See Chicago Municipal Code § 4-14-010 (amended at Chi. City Clerk J. Proc. 20,269 (Sept. 9, 2020)). The court further noted that while hotels are typically zoned only in business or commercial districts, shared housing units are zoned in business or commercial districts, as well as residential districts. Shared housing and its business model can clearly affect the peace and character of residential neighborhoods, and also the City's enforcement resources, thus requiring reasonable regulation of any potential excessive noises issuing from those units. Plaintiffs also assert that home-sharing users are subject to a more stringent noise proscription than long-term renters in the same residential zone. An easy way to explain this is that short-term home-sharing users are likely to be on *vacation*, and vacation often begets parties, and parties often beget noise. So, that too is a reasonable differential treatment. For all these reasons, plaintiffs constitutional challenges to the noise ordinance must fail.

¶ 45            *Taxpayer Standing (Original Complaint and Second-Amended Complaint)*

¶ 46    Alternatively, plaintiffs contend that they, as taxpayers in the City of Chicago, have standing to pursue their claims challenging the allegedly unconstitutional home sharing

ordinance. In Illinois, a party's status as a taxpayer may provide a basis for his or her standing. *Barber v. City of Springfield*, 406 Ill. App. 3d 1099, 1102 (2011). Taxpayer standing is a narrow doctrine that provides taxpayers the ability to challenge the misappropriation of public funds. *Marshall v. County of Cook*, 2016 IL App (1st) 142864, ¶ 15. "The key to taxpayer standing is the plaintiff[s'] liability to replenish public revenues depleted by an allegedly unlawful governmental action." *Barber*, 406 Ill. App. 3d at 1102. While taxpayers possess an equitable right to bring suit to protect these funds, a simple allegation of taxpayer status is insufficient to assert a taxpayer suit. See *Village of Leland ex rel. Brouwer v. Leland Community School District No. 1*, 183 Ill. App. 3d 876, 879 (1989) (noting that "[t]he taxpayer must further allege an illegal appropriation and that he or the taxpayers as a whole will suffer some financial injury as a result of the misappropriation").

¶ 47    In other words, taxpayer standing requires a specific showing that the plaintiffs will be liable to replenish public revenues depleted by the alleged misuse of those funds. *Marshall*, 2016 IL App (1st) 142864, ¶ 16; see also *Stermer*, 2014 IL App (4th) 130079, ¶ 29 (noting that "[a] plaintiff whose claims rest on his or her standing as a taxpayer must allege [an] equitable ownership of funds depleted by misappropriation and his or her liability to replenish them in the complaint; otherwise, the complaint is fatally defective" (internal quotation marks omitted)). Plaintiffs did not meet that burden in this case.

¶ 48    Here, the crux of plaintiffs' argument is that because plaintiffs pay sales and property taxes in Chicago, they have standing to sue over the supposedly unconstitutional home sharing ordinance. Plaintiffs, however, presented no evidence showing that they, as taxpayers, have been or will be liable for increased sales or property taxes due to the ordinance. Instead, they simply alleged, in a conclusory fashion, that "the City is using general revenue fund—*i.e.*, Plaintiffs' tax

dollars, which Plaintiffs are liable to replenish—to implement the Ordinance." This does not show that there has been or will be an increase in plaintiffs' sales or property taxes as a result of the ordinance, let alone that plaintiffs have been or would be liable for such an increase. As noted above, taxpayer standing requires a specific showing that plaintiffs will be liable to replenish public funds depleted by the ordinance, and as set forth, plaintiffs have not made such a showing. See, *e.g.*, *Schacht v. Brown*, 2015 IL App (1st) 133035, ¶¶ 20, 28-29 (affirming the section 2-619.1 dismissal of the plaintiffs' complaint because the plaintiffs failed to establish standing where they did not provide any evidence that they were or would be responsible for replenishing public revenues depleted by the clerk's alleged retention or misuse of said funds); *Marshall*, 2016 IL App (1st) 142864, ¶ 16 (similar); *Barber*, 406 Ill. App. 3d at 1106 (similar).

¶ 49 Finally, plaintiffs have not provided any relevant legal authority showing that such bare allegations are sufficient to establish taxpayer standing. *Cf. Snow v. Dixon*, 66 Ill. 2d 443, 450-53 (1977) (holding the plaintiff had taxpayer standing to sue over an allegedly unlawful tax that collected over $5.6 million per year, $41,400 of which was expended in the auditor's salary for its collection of the tax); *Krebs v. Thompson*, 387 Ill. 471, 473-76 (1944) (holding the plaintiff had taxpayer standing to sue over an allegedly unconstitutional act that collected fees totaling about $100,000, an amount that exceeded the $11,000 cost of administering the act). While plaintiffs claim they were not required to provide more specific evidence of tax increases at the section 2-619.1 stage, they have not directed us to any legal authority that supports their claim. Accordingly, we affirm the circuit court's judgment.

¶ 50 CONCLUSION

¶ 51 We affirm the judgment of the circuit court of Cook County dismissing the various counts in plaintiffs' complaint and amended complaints.

¶ 52    Affirmed.

*Mendez v. City of Chicago*, **2023 IL App (1st) 211513**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 16-CH-15489; the Hon. Cecilia A. Horan, Judge, presiding. |
| **Attorneys for Appellant:** | Jacob Huebert and Jeffrey Schwab, of Liberty Justice Center, of Chicago, and Christina Sandefur, of Goldwater Institute, of Phoenix, Arizona, for appellants. |
| **Attorneys for Appellee:** | Celia Meza, Corporation Counsel, of Chicago (Myriam Zreczny Kasper, Susan Loose, and Elizabeth Mary Tisher, Assistant Corporation Counsel, of counsel), for appellees. |