# Illinois Official Reports

## Appellate Court

*Veazey v. Board of Education of Rich Township High School District 227*,
2016 IL App (1st) 151795

| | |
|---|---|
| Appellate Court Caption | FREDERICK C. VEAZEY, Plaintiff-Appellant, v. THE BOARD OF EDUCATION OF RICH TOWNSHIP HIGH SCHOOL DISTRICT 227, BRIDGET IMOUKHUEDE, and EMMANUEL IMOUKHUEDE, Defendants-Appellees. |
| District & No. | First District, Third Division<br>Docket No. 1-15-1795 |
| Filed | July 20, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 14-CH-12484; the Hon. Mary Lane Mikva, Judge, presiding. |
| Judgment | Reversed and remanded with directions. |
| Counsel on Appeal | Center for Open Government Law Clinic of Chicago-Kent College of Law and Krislov & Associates, Ltd. (Clinton A. Krislov, of counsel), both of Chicago, for appellant.<br><br>Johnson, Jones, Snelling, Gilbert & Davis, P.C. (Jeffrey B. Gilbert, of counsel), and Robert E. Lehrer, both of Chicago, for appellees Bridget Imoukhuede and Emmanuel Imoukhuede.<br><br>Franczek Radelet P.C., of Chicago (John A. Reiias, Jacqueline F. Wernz, and Nicki B. Bazer, of counsel), for appellee Board of Education of Rich Township High School District 227. |

Panel                    PRESIDING JUSTICE MASON delivered the judgment of the court, with opinion.
Justices Pucinski and Lavin concurred in the judgment and opinion.

**OPINION**

¶ 1        Plaintiff Frederick Veazey filed suit seeking, among other relief, a declaratory judgment that a vote by defendant the Board of Education of Rich Township High School District 227 (Board) to reinstate defendant Dr. Bridget Imoukhuede's employment with back pay and attorney fees was illegal because the Board allowed Imoukhuede's husband and Board member, defendant Emmanuel Imoukhuede, to cast the tie-breaking vote in violation of defendant Rich Township High School District 227's (District) anti-nepotism policy. The trial court *sua sponte* invoked the Administrative Review Law (Review Law) (735 ILCS 5/3-101 *et seq.* (West 2014)) and dismissed Veazey's second amended complaint, finding that he lacked standing to challenge the Board's vote because he was not a party to the administrative proceedings. We agree with Veazey that his challenge was directed to the legality of the Board's vote and not the propriety of Imoukhuede's reinstatement thus rendering the Review Law inapplicable. We also agree that Veazey has standing to pursue that challenge. But because Veazey's second amended complaint fails to sufficiently plead facts supporting taxpayer standing, an issue not addressed by the trial court, we remand and direct the trial court to grant leave to amend. Consequently, we reverse the trial court's dismissal of Veazey's second amended complaint and remand for further proceedings.

¶ 2                                    BACKGROUND

¶ 3        During the 2012-13 school year, the District employed Imoukhuede, a tenured teacher, as the assistant principal of alternative programs. The District hired Imoukhuede in 1990; her husband was first elected to the Board in 2007.

¶ 4        On March 19, 2013, the District adopted the following anti-nepotism policy:

"For the purposes of this section, a relative is defined as a child, parent, grandparent, sibling, cousin, or spouse who is connected to another in that regard by way of legal (adoption, marriage, or otherwise), blood, in-law, step, or foster relationship.

An individual who is a relative of either a District employee or a Board member is ineligible to be hired by the District unless there are no other qualified applicants for the position. This policy does not apply to individuals who have already been hired, even if their relative is subsequently elected to the board.

Employees and Board members will not participate in employment decisions concerning either their relative or the position for which their relative has applied/currently holds. This includes, but is not limited to, decisions regarding hiring, employment status, reappointment, placement, evaluation, pay rate, salary increases, promotion, tenure, and awards."

¶ 5        At a Board meeting held on July 30, 2013, with a quorum of Board members present, four members voted in favor of a resolution to suspend Imoukhuede without pay and discharge her.

The record does not reflect whether Emmanuel voted on the resolution. The Board's resolution was adopted and became effective on August 6, 2013.

¶ 6 Pursuant to the School Code (105 ILCS 5/34-85 (West 2014)), Imoukhuede contested the Board's resolution and requested a hearing. Following the hearing, the hearing officer found that the Board's decision to discharge Imoukhuede was arbitrary and capricious and against the manifest weight of the evidence. The hearing officer also found that the Board violated Imoukhuede's due process rights. The hearing officer recommended Imoukhuede's reinstatement to the same position or a substantially equivalent position and reimbursement for all lost income and benefits, including reasonable attorney fees.

¶ 7 The Board held a special meeting on June 9, 2014, to vote on whether to accept the hearing officer's recommendation to reinstate Imoukhuede. Emmanuel initially indicated he would abstain from voting. When the matter was called for a vote, three members voted in favor of adopting the hearing officer's recommendation and three members voted against. A tie vote would have meant that the resolution did not pass and Imoukhuede would not be reinstated. Emmanuel reversed his position and ultimately cast the deciding vote in favor of reinstating his wife, creating a 4 to 3 majority.

¶ 8 On July 15, 2014, the Board held another meeting to consider whether to adopt the hearing officer's recommendation that Imoukhuede be awarded back pay and attorney fees. Five members of the Board—constituting a quorum—were present. This time, Emmanuel expressed no reservations about participating in the vote. Three board members, including Emmanuel, voted in favor of payment of back pay and attorney fees and two members voted against it. One of the board members voting against the resolution explained that payment was not mandated by any court but merely reflected the hearing officer's recommendation.

¶ 9 After the Board's vote, Veazey, as a taxpayer residing within the District's boundaries, filed a complaint against Imoukhuede, the Board, and Emmanuel. Veazey initially proceeded *pro se* but was later represented by counsel who amended his complaint twice. Veazey's second amended complaint included the following counts: (1) a claim under the declaratory judgment provision of the Code of Civil Procedure (Code) (735 ILCS 5/2-701 (West 2014)) seeking a determination that the Board conducted an illegal vote by permitting Emmanuel to cast votes in favor of resolutions benefitting his wife in violation of the District's anti-nepotism policy, (2) a claim asserting it was "inequitable" for Imoukhuede to retain the funds received from the Board's illegal vote, and (3) a claim seeking recovery of fraudulently obtained public funds (735 ILCS 5/20-103 (West 2014)) based on the allegation that Emmanuel engaged in a fraudulent scheme to reinstate his wife with back pay in violation of the anti-nepotism policy. Veazey withdrew a previously pled count asserting a taxpayer claim to recover funds improperly expended belonging to a municipality (65 ILCS 5/1-5-1 (West 2014)) in recognition of the fact that the Board was not a municipality.

¶ 10 Imoukhuede responded with a section 2-619.1 (735 ILCS 5/2-619.1 (West 2014)) combined motion to dismiss pursuant to section 2-615 (735 ILCS 5/2-615 (West 2014)) and section 2-619(a)(9) (735 ILCS 5/2-619(a)(9) (West 2014)) of the Code. The Board and Emmanuel together filed a section 2-619(a)(9) motion to dismiss. Both motions to dismiss asserted primarily that no actual controversy existed to support a cause of action for declaratory judgment and that the anti-nepotism policy lacked the force and effect of law.

¶ 11 During the hearing on the motions, the trial judge *sua sponte* determined that the Review Law was the only avenue of review and because Veazey was not a party to the administrative

proceeding, he lacked standing to bring his claims. The trial court granted the motions to dismiss with prejudice "for reasons stated in open court."

¶ 12    After the trial court's ruling, Emmanuel lost his bid for re-election to the Board. Following the election, the new Board was granted leave to appear through substitute counsel. The Board's new counsel filed a motion seeking "clarification" as to whether the trial court based its ruling on the Review Law, and if so, the Board claimed error arguing, in part, that the Review Law had no applicability to the reinstatement, and not dismissal, of an employee.

¶ 13    The court clarified its conclusion that the Review Law applied and Veazey could not challenge the Board's decision. The court also observed that the Board likewise could not have sought review under the Review Law but refrained from addressing any rights the Board may have in any other proceeding.

¶ 14    Shortly after that ruling, the Board's new counsel filed a complaint against the Imoukhuedes. In the new action, the Board, contrary to its defense of the vote in Veazey's case, took the position that Emmanuel (1) violated the anti-nepotism policy by voting in favor of reinstating his wife, (2) created a conflict of interest by voting in favor of reinstating his wife, and (3) fraudulently concealed from the Board that his wife had announced her retirement prior to the vote to reinstate her. The Board also asserted that Imoukhuede acted in bad faith when she requested a hearing regarding her suspension even though she had already retired. The Board further contended that the Imoukhuedes were unjustly enriched by the funds paid to Imoukhuede and sought recovery of the fraudulently obtained public funds (735 ILCS 5/20-103 (West 2014)). The Board's complaint against the Imoukhuedes is not at issue in this appeal.

¶ 15                                         ANALYSIS

¶ 16    We are cognizant of the fact that the Board in the trial court advocated against Veazey and defended the legality of its vote. Although the Board still takes the position that it was not guilty of any wrongdoing, in this court the Board is now advocating in favor of Veazey's position both that the Review Law is not applicable and that Veazey has taxpayer standing. The Board's about-face was occasioned by the intervening election and not by any change in the law. But the doctrines of invited error, waiver, and judicial estoppel prevent the Board from taking one position in the trial court and a different position on appeal. *Sakellariadis v. Campbell*, 391 Ill. App. 3d 795, 800 (2009). Accordingly, we disregard the Board's contentions on appeal urging reversal of the trial court's dismissal of Veazey's complaint and concentrate on the arguments advanced by Veazey and the Imoukhuedes.

¶ 17    Veazey challenges the trial court's dismissal of his complaint based on the court's conclusion that his only available remedy for review of the Board's vote was under the Review Law. Veazey asserts that his claims regarding the illegality of the Board's vote were unrelated to the merits of Imoukhuede's reinstatement or the administrative hearing. We agree with Veazey that the Review Law is not applicable to his challenge to the Board's action in allowing a board member with a direct financial interest to cast deciding votes in violation of the District's anti-nepotism policy.

¶ 18    The Review Law applies to:

> "every action to review judicially a final decision of any administrative agency where the Act creating or conferring power on such agency, by express reference, adopts the provisions of Article III of this Act or its predecessor, the Administrative Review Act.

- 4 -

**\*\*\*** In all such cases, any other statutory, equitable or common law mode of review of decisions of administrative agencies heretofore available shall not hereafter be employed." 735 ILCS 5/3-102 (West 2014).

Section 24-16 of the School Code (105 ILCS 5/24-16 (West 2014)) adopts the Review Law and applies it to "all proceedings instituted for the judicial review of final administrative decisions of the hearing officer for dismissals pursuant to Article 24A of this Code or of a school board for *dismissal* for cause under Section 24-12 [removal or dismissal of teachers in contractual continued service] of this Article." (Emphasis added.) 105 ILCS 5/24-16 (West 2014). An "administrative decision" means "any decision, order or determination of any administrative agency rendered in a particular case, which affects the legal rights, duties or privileges of parties and which terminates the proceedings before the administrative agency." 735 ILCS 5/3-101 (West 2014).

¶ 19    Here, Veazey's complaint clearly challenges the Board's conduct in allowing Emmanuel to vote on matters concerning his wife, asserting that his vote should have been disregarded because it was cast in violation of the anti-nepotism policy. Indeed, Veazey requested a declaratory judgment that the Board's June 9 and July 15, 2014, votes—adopting the hearing officer's recommendation for reinstatement with back pay and reasonable attorney fees—were invalid and void because they were conducted contrary to the anti-nepotism policy. Nothing in the complaint challenged or sought review of the merits of the administrative decision, *i.e.*, whether Imoukhuede should be reinstated or awarded back pay and attorney fees. While a vote to reject the hearing officer's recommendation and uphold Imoukhuede's dismissal would have been subject to the Review Law, the Board's vote to reinstate her is not. Consequently, the Review Law does not apply because the allegations of the complaint on their face challenge only the manner in which the Board voted and not the merits of the Board's vote.

¶ 20    More importantly, if we were to find that a challenge to the Board's voting procedure was subject to the Review Law, then there would be no means for nonparty individuals to hold the Board, and its members, accountable for their conduct in acting contrary to polices governing their actions. Adopting the Imoukhuedes' position would extend the law's scope beyond the review of administrative decisions and would encompass any claim with a tangential connection to an administrative proceeding. But the Review Law is an exclusive method of review limited to specific cases and the areas of its applicability must be clearly defined. *Chestnut v. Lodge*, 34 Ill. 2d 567, 571 (1966). Likewise, a claim properly reviewed under the Review Law eliminates any other statutory, equitable, or common-law remedies. *Sierra Club v. Office of Mines & Minerals*, 2015 IL App (4th) 140405, ¶ 24. In this case, expansion of the Review Law's applicability to preclude a challenge relating to the Board's voting procedures (which is wholly independent of any procedural irregularities relating to administrative review proceedings) is unwarranted. Because Veazey's claims fall outside the scope of the Review Law, its provisions do not bar his claims.

¶ 21    Moreover, we are mindful of the practical effect of the Board's vote adopting the hearing officer's recommendation to reinstate Imoukhuede with back pay and attorney fees. Presumably, had the Board adhered to its own policy and prohibited Emmanuel from voting, the resolution would not have passed and Imoukhuede would not have been reinstated. In that case, Imoukhuede would have had the right as an aggrieved party to seek judicial review of her dismissal under the Review Law pursuant to the School Code. 105 ILCS 5/24-16 (West 2014). Ultimately, the Board would have incurred additional expense in litigating the matter, and the

end result may have been the same: Imoukhuede's reinstatement with back pay and attorney fees.[1] Nonetheless, we cannot ignore Veazey's allegation that the Board acted illegally in allowing Emmanuel to vote and further cannot accept the Imoukhuedes' contention that such a vote by a public body is immune from judicial oversight. See *Tanner v. Solomon*, 58 Ill. App. 2d 134, 137 (1965) (finding the Review Law had no relevance to a claim where one board member sought a declaratory judgment relating to the actions of two other members of the same board). Consequently, the trial court erred in dismissing Veazey's complaint based on its finding that Veazey's only relief was under the Review Law.

¶ 22    We next consider whether Veazey's complaint warrants dismissal on any other basis. As an initial matter, we note that Veazey's second amended complaint included claims for declaratory judgment, equitable relief, and recovery of fraudulently obtained public funds, but Veazey limits his arguments on appeal to the viability of his declaratory judgment claim. Accordingly, we too limit our review to that claim as Veazey has waived review of any other claim. See *Vancura v. Katris*, 238 Ill. 2d 352, 369 (2010) (points not argued in appellant's brief " 'are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing' " (quoting Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008))).

¶ 23    We first consider, under section 2-619(a)(9), whether the circumstances of this case—involving a taxpayer's challenge to an allegedly invalid vote by a public body, which resulted in the expenditure of public funds—fits within that category of cases where taxpayers have standing to sue. A section 2-619 motion to dismiss admits the legal sufficiency of the complaint but asserts an affirmative defense or other matter that avoids or defeats the plaintiff's claim. *Relf v. Shatayeva*, 2013 IL 114925, ¶ 20; *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006). "Affirmative matter" includes any defense other than one that negates an essential allegation of a plaintiff's cause of action. *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 115 (1993). Lack of standing is an affirmative defense. *Wexler v. Wirtz Corp.*, 211 Ill. 2d 18, 22 (2004). We review the trial court's ruling on a section 2-619 motion to dismiss *de novo*. *Lutkauskas v. Ricker*, 2015 IL 117090, ¶ 29.

¶ 24    Taxpayers may have standing to sue either in their personal capacity as taxpayers or derivatively on behalf of a local governmental unit (taxpayer derivative). Taxpayer plaintiffs have direct standing to enjoin the misuse of public funds, which arises from the taxpayers' ownership of the public funds and their liability to replenish the public treasury for the deficiency caused by the misappropriation. *Scachitti v. UBS Financial Services*, 215 Ill. 2d 484, 493-94 (2005) (citing *Barco Manufacturing Co. v. Wright*, 10 Ill. 2d 157, 160 (1956)). The misuse of public funds for illegal purposes is "damage" entitling taxpayers to sue. *Id*. at 494. On the other hand, in a taxpayer derivative action, the taxpayer brings an action on behalf of a local government entity to enforce a cause of action belonging to that entity. *Id*.; *Lyons v. Ryan*, 201 Ill. 2d 529, 534-35 (2002).

¶ 25    The nature of Veazey's declaratory judgment claim falls squarely within those cases that have recognized a taxpayer challenge to the wrongful depletion of public funds. *Martini v. Netsch*, 272 Ill. App. 3d 693, 697 (1995). Veazey's action is based on the Board's expenditure of District funds to reinstate Imoukhuede and pay her back pay and attorney fees, which Veazey asserts resulted from illegal Board votes. The facts of this case demonstrate the need

---

[1]We express no view on the merits of the Board's decision to dismiss Imoukhuede or the hearing officer's recommendation to reinstate her as those issues are not before us.

for according a taxpayer standing to challenge an apparently illegal vote by the Board, which serves as a check on the Board's actions. Indeed, the narrow principle of taxpayer standing provides an individual such as Veazey a basis to challenge the Board's alleged wrongful spending, *i.e.*, conducting an illegal vote that resulted in reinstatement and payment of back pay and attorney fees to Imoukhuede. *Barco Manufacturing Co.*, 10 Ill. 2d at 160 ("[i]t has long been the rule in Illinois that citizens and taxpayers have a right to enjoin the misuse of public funds, and that this right is based upon the taxpayers' ownership of such funds and their liability to replenish the public treasury for the deficiency caused by such misappropriation"). In his capacity as a taxpayer, Veazey has standing to challenge the Board's conduct in allowing Emmanuel to cast the deciding votes in favor of resolutions directly benefitting his wife and himself and which involved the expenditure of public funds.

¶ 26    The Imoukhuedes also argue that Veazey lacks taxpayer derivative standing. But Veazey's request for a declaratory judgment does not assert a derivative claim on the Board's behalf. Certainly, the Board could not bring a declaratory judgment action against itself to establish that Imoukhuede's reinstatement with back pay and attorney fees was the product of an illegal vote. See *Feen v. Ray*, 109 Ill. 2d 339, 346 (1985) (a taxpayer derivative suit requires the governmental entity to have refused taxpayers' requests to enforce on *its own* cause of action). Likewise, Veazey's claims are not derivative of an action belonging to the Board based upon any wrongful third-party actions. See, *e.g.*, *id*. at 342, 345 (taxpayer filed a complaint seeking to recover from a bank on behalf of a school district fraudulently deprived interest on district funds).

¶ 27    Moreover, it cannot be said that Veazey is suing derivatively on behalf of the District. Although a board of education has the power under the School Code to sue and be sued in court proceedings, a school district lacks the capacity to sue on its own behalf unless specifically permitted by a companion statute. *Board of Education of Bremen High School District No. 228 v. Mitchell*, 387 Ill. App. 3d 117, 124 (2008) (citing 105 ILCS 5/10-2 (West 2006)). Neither party points to a companion statute that would have authorized the District to bring a cause of action under these facts. Because neither the District nor the Board could have brought the declaratory judgment action based on the Board's illegal vote, Veazey's claims are not derivative of an action belonging to the Board or the District. For this reason, the Imoukhuedes' reliance on *Lutkauskas* and *Scachitti* is misplaced because Veazey's claims are not derivative in nature.

¶ 28    The Imoukhuedes also claim that Veazey's complaint warranted dismissal because the Board's anti-nepotism provision is merely an internal board policy document and not a "rule" that can be judicially enforced. We disagree. A board of education is designated as a district's governing body. *Mitchell*, 387 Ill. App. 3d at 120 (a board of education " 'furnishes the method and machinery for the government and management of the district' " (quoting *Board of Education of District No. 88 v. Home Real Estate Improvement Corp.*, 378 Ill. 298, 303 (1941))). Under the School Code, school boards have the power to adopt and enforce all necessary rules for the management and government of the public schools in the district. 105 ILCS 5/10-20.5 (West 2014). A board of education's powers include those expressly granted in the School Code and those implied powers necessary to effect them. *Mitchell*, 387 Ill. App. 3d at 121.

¶ 29    Here, nothing in the record demonstrates that the Board distinguishes between "rules" and "policies" or that the Board has adopted other governing "rules." Notably, the table of contents

to the Board's policy manual included in the record states that the District's policies "are both legally compliant as well as appropriate for our students and the community." And although the entirety of the Board's policies is not included in the record, they are posted on the Board's website. Those policies are comprehensive and cover topics such as the hiring, retention, and discipline of teachers and other District employees, as well as student discipline. See Rich Township High School District Board of Education Policy Manual, *available at* http://policy.microscribepub.com/cgi-bin/om_isapi.dll?clientID=632324763&depth=2&infob ase=rich_227.nfo&softpage=PL_frame (last visited July 18, 2016); *People v. Crawford*, 2013 IL App (1st) 100310, ¶ 118 n.9 (we may take judicial notice of information "on a public website even though the information was not in the record on appeal"); *Advocate Health & Hospitals Corp. v. Bank One, N.A.*, 348 Ill. App. 3d 755, 759 (2004) (a court may take judicial notice of public records if such notice will aid in the efficient disposition of the case). Moreover, contrary to the Imoukhuedes' position that the anti-nepotism policy is merely an unenforceable suggestion, the Board's counsel advised the Board that it must abide by its own policies. Consequently, we find that the anti-nepotism policy, like the other policies in the manual, is binding on the Board.

¶ 30    Furthermore, the Board's online policy manual includes a policy addressing the District's governance and expressly provides the Board with the authority "to adopt, *enforce*, and monitor all *policies* for the management and governance of the District's schools." (Emphases added.) Rich Township High School District Board of Education Policy Manual § 2:10, *available at* http://policy.microscribepub.com/cgi-bin/om_isapi.dll?clientID=632324763& depth=2&infobase=rich_227.nfo&softpage=PL_frame (last visited July 18, 2016). For this additional reason, the suggestion that the anti-nepotism policy serves as an informal guide and, thus, an unenforceable "suggestion" is not well-taken. Instead, it is clear that the Board adopted its policies based on the authority given to it both under the School Code and by the District and that its "policies" carry the force of law. See *Heifner v. Board of Education of Morris Community High School District No. 101*, 32 Ill. App. 3d 83, 87 (1975) (rules adopted pursuant to statutory authority have the force of law); *Tyska v. Board of Education of Township High School District 214*, 117 Ill. App. 3d 917, 923 (1983) (school board rules have the force of law). Consequently, a vote taken in violation of the anti-nepotism policy may be deemed illegal.

¶ 31    The Imoukhuedes further contend that even if the anti-nepotism policy may be judicially enforced, the Board did nothing illegal and Veazey, therefore, has no cause of action to declare the Board's vote void. The Imoukhuedes point to the portion of the anti-nepotism policy expressly stating that "[t]his policy does not apply to individuals who have already been hired, even if their relative is subsequently elected to the board." The Imoukhuedes rely on that language and the fact that Imoukhuede was already a District employee before Emmanuel's election to the Board to assert that the Board's vote was not illegal since the policy did not apply. But when read in context,[2] the cited exclusion clearly relates to the hiring of an

---

[2]The applicable paragraph reads: "An individual who is a relative of either a District employee or a Board member is ineligible to be hired by the District unless there are no other qualified applicants for the position. This policy does not apply to individuals who have already been hired, even if their relative is subsequently elected to the board." Rich Township High School District Board of Education Policy Manual § 2:90, *available at* http://policy.microscribepub.com/cgi-bin/om_isapi.dll?clientID= 3234065578&depth=2&infobase=rich_227.nfo&softpage=PL_frame (last visited July 18, 2016).

employee and does not purport to exclude application of the anti-nepotism policy to previously employed individuals, *i.e.*, there is no "grandfather" clause excluding previously hired employees from the anti-nepotism policy.

¶ 32    Finally, we address under section 2-615 the sufficiency of the allegations of Veazey's complaint. A section 2-615 motion to dismiss tests the legal sufficiency of the complaint based on defects apparent on the face of the pleading. *Hadley v. Doe*, 2015 IL 118000, ¶ 29; *Simpkins v. CSX Transportation, Inc.*, 2012 IL 110662, ¶ 13. The relevant inquiry is whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, set forth sufficient facts to establish a cause of action upon which relief may be granted. *Doe*, 2015 IL 118000, ¶ 29. Given its ruling on the section 2-619 motions, the trial court did not reach defendants' section 2-615 challenge to the sufficiency of the complaint's allegations. But because we are remanding this matter for further proceedings, we will address the issue.

¶ 33    The elements of a cause of action for a declaratory judgment are "(1) a plaintiff with a legal tangible interest; (2) a defendant having an opposing interest; and (3) an actual controversy between the parties concerning such interests." *Beahringer v. Page*, 204 Ill. 2d 363, 372 (2003). An "actual controversy" "requires a showing that the underlying facts and issues of the case are not moot or premature, so as to require the court to pass judgment on mere abstract propositions of law, render an advisory opinion, or give legal advice as to future events." (Emphasis and internal quotation marks omitted.) *Id.* at 375. The threshold requirement for establishing a declaratory judgment claim is whether a plaintiff "can plead a legal theory in which he has a personal legal interest." *Gore v. Indiana Insurance Co.*, 376 Ill. App. 3d 282, 291 (2007).

¶ 34    Regarding the first element, Veazey, as stated, in his capacity as a taxpayer, has an interest in invalidating the Board's votes because those votes directly resulted in Imoukhuede's reinstatement and the disbursement of funds to Imoukhuede for back pay and attorney fees. In his second amended complaint, Veazey identified himself as a taxpayer residing in the District's boundaries and pled the illegality of the Board's vote but failed to specifically plead that, as a taxpayer, he has been or will be liable to replenish the District's misappropriation of funds, *i.e.*, the payments made to Imoukhuede in conjunction with her reinstatement. *Schacht v. Brown*, 2015 IL App (1st) 133035, ¶ 20. Because such allegations are absent, Veazey's complaint is "fatally defective." *Wirtz Corp.*, 211 Ill. 2d at 22. But Veazey advances arguments on appeal on this point and he would likely be able to cure this defect if given leave to amend. Presuming Veazey properly amends his complaint, the first element of a declaratory judgment action would be established for pleading purposes.

¶ 35    Regarding the remaining two elements, the Imoukhuedes' position regarding the validity of the Board's votes satisfies both the opposing interest and concrete controversy elements of Veazey's claim for declaratory relief.

¶ 36                                             CONCLUSION

¶ 37    In sum, the Imoukhuedes failed to demonstrate any affirmative matter or defenses defeating Veazey's claims. Assuming that on remand Veazey alleges facts demonstrating his liability to replenish public funds used to pay Imoukhuede, he has standing as a taxpayer to pursue a claim for declaratory relief challenging the votes in violation of the Board's anti-nepotism policy that resulted in the expenditure of those funds. Therefore, we reverse the trial court's order dismissing Veazey's second amended complaint and remand with directions

to grant Veazey leave to amend his complaint.

¶ 38        Reversed and remanded with directions.