2024 IL App (1st) 221713-U
No. 1-22-1713
Order filed April 26, 2024

Sixth Division

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| REVITE CORPORATION, an Illinois Corporation and DR. HALYNA BORYSLAVSKA, | ) ) ) ) | |
| Plaintiffs-Appellants, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| v. | ) ) | |
| 2424 CHICAGO, INC., an Illinois corporation, VINTAGE REALTY, INC., an Illinois corporation, LILIA KULAS ZAPARANIUK, an individual, MICHAEL ZAPARANIUK, an individual, and JERRY KULAS, an individual, | ) ) ) ) ) ) ) ) | No. 2017 L 1016 <br><br> The Honorable Michael F. Otto, Judge, presiding. |
| Defendants-Appellees. | ) | |

JUSTICE HYMAN delivered the judgment of the court.
Presiding Justice Oden Johnson and Justice Tailor concurred in the judgment.

**ORDER**

¶ 1 *Held*: Affirming order dismissing condominium purchasers' breach of contract and negligent misrepresentation claims against sellers and order granting summary judgment to sellers on plaintiffs' claims that sellers' statements violated the Real Estate License Act of 2000 and constituted negligent misrepresentations.

¶ 2    Dr. Halyna Boryslavska and her company, Revite Corporation, purchased three units and two parking spaces in a condominium building owned and developed by 2424 Chicago, Inc. Boryslavska and Revite filed a 10-count complaint against 2424 Chicago, Inc., its owners, Jerry Kulas and Michael and Lilia Zaparaniuk, as well as Vintage Realty (collectively, "the Sellers").

¶ 3    The trial court dismissed several counts, granted summary judgment on other counts, and dismissed the complaint after the parties settled remaining claims.

¶ 4    Relevant here, Boryslavska contends the trial court erred in dismissing (i) claims alleging breach of contract for construction defects because the notice provision in the purchase agreement was ambiguous; (ii) claims relating to the commercial units' roof rights, (iii) allegations that the Sellers violated the Act by failing to inform her Revite could not install a fence without Condo Board approval and to advise her to retain an independent inspector, and (iv) the claim of breach of contract for failing to record the Reciprocal Easement Agreement. Boryslavska also contends the trial court erred in granting summary judgment on (i) the claim that the Sellers violated the Illinois Real Estate License Act of 2000, 225 ILCS 454 (Act), by falsely stating Revite could install a fence and (ii) the negligent misrepresentation claim because questions of material fact remained as to whether Boryslavska reasonably relied on the Sellers' statements that Revite could install a fence.

¶ 5    We affirm. The trial court properly dismissed Boryslavska's breach of contract and negligent misrepresentation claims and summary judgment was warranted where no questions of fact remained regarding allegations that the Sellers' statements about Revite's right to install a fence violated the Act or constituted negligent misrepresentations.

¶ 6                                    Background

¶ 7  In 2014, Dr. Halyna Boryslavska relocated her home and medical practice to a new condominium building at 2424 Chicago Avenue, Chicago. Lilia Zaparaniuk, her husband Michael Zaparaniuk, and Lilia's brothers, Jerry and Paul Kulas, owned the condominium development company 2424 Chicago Inc. The Zaparaniuks also owned Vintage Realty, Inc., the property's real estate broker, with Lilia as the managing agent and Michael and Jerry as brokers. Jerry also served as the president and secretary of JMK Builders, the development's general contractor. Paul Kulas, who is not a defendant, was the Sellers' attorney.

¶ 8  In late April 2014, Boryslavska, a physician and the president of Revite Corporation, contacted Vintage Realty to inquire about purchasing a residential unit, two ground floor commercial units on behalf of Revite to operate a medical clinic, and two parking spaces. On May 7, 2014, Boryslavska and Wayne Swanberg, a Revite officer, met with the Zaparaniuks at the building. Boryslavska told Michael that Revite would need a fence in front of the commercial units as her patients included pregnant women and children, and the street was heavily trafficked. Michael told her that area in front of the commercial units would belong to Revite and she could install a fence, but a sign for the clinic would require Board approval.

¶ 9  Two days later, Boryslavska and Swanberg met with Michael at the property a second time. Michael showed them several residential units and told them Unit 201 had roof rights, garage roof rights, and a deeded parking space. According to Swanberg, during this second meeting, Michael reiterated that Revite could do what it wanted with the outdoor space, a fence would not be a problem, but signage required Condo Board approval. Michael also told them to look at buildings in the neighborhood to determine how to install a fence.

¶ 10  Boryslavska and Swanberg met Michael at Vintage Realty's office the next day. Boryslavska asked Michael if he could be her agent while simultaneously representing the

Sellers. Michael agreed, saying he and Lilia would represent her and protect her interests. Michael presented Boryslavska with purchase agreements for a residential unit, commercial units, and two parking spaces. Michael is listed as the broker for Boryslavska and Revite, and Vintage Realty is listed as the Sellers' broker on both purchase agreements.

¶ 11 A Certificate of Limited Warranty in the purchase agreements stated in relevant part:

> Warranty provisions. (a) Seller shall deliver to Purchaser at Closing a "Certificate of Limited Warranty" covering construction of the Commercial Unit, a copy of which has been reviewed, approved and accepted by Purchaser and will be executed by Purchaser at Closing, in the form attached hereto. Making of final payment by Purchaser to Seller of the Purchase Price shall constitute a waiver and complete release of all claims by Purchaser against Seller with respect to the Commercial Unit and this Contract, except those which are expressly covered by the warranty hereafter provided or are expressly stated herein to survive the closing.

¶ 12 The Limited Warranty expressly excluded express and implied warranties for the commercial unit, which, by signing the agreement, the purchaser acknowledged and understood. Section 3 of the Limited Warranty further stated that the seller would remedy defects in workmanship and material as long as brought to its attention within one year of the date of closing. Section 6 provided that "any notices or claims to be made under the warranty be in writing and delivered to" the Sellers' attorney.

¶ 13 The Purchase Agreement for the commercial units provided for a Reciprocal Easement Agreement between the commercial units and the Condo Association, stating, in relevant part,

> "The property containing Commercial Unit and the Parking Unit (if any) has been or will be, prior to Closing (as hereinafter defined) subject to that Reciprocal Easement

Agreement entered into with the 2424 West Chicago Condominium Association (the "Association"). The Association and the unit owners of the Association own the residential condominium units located on the second, third and fourth floors of the Property. Purchaser acknowledges receipt of the Reciprocal Easement Agreement ("REA") and has had an opportunity to review the REA prior to Purchaser's execution of this Agreement. Seller reserves the right at any time and from time to time to modify the REA in its sole and absolute discretion, provided that Seller shall notify Purchaser or obtain Purchaser's approval of any changes in the REA when and if such notice or approval is required by law."

¶ 14    Boryslavska signed the purchase agreements the same day and the Sellers accepted them on May 12, 2014. The following day, Lilia emailed several documents to Boryslavska, including the signed purchase agreements and an August 1, 2013, property report containing proposed Condominium Declaration and By-laws and the Reciprocal Easement Agreement.

¶ 15    The Declaration defines Limited Common Elements to include "Balconies/Terraces and "yard space." Common Elements include "all Limited Common Elements." The Declaration further provides, in relevant part, that "There shall be no obstruction of the Common Elements *** without the prior consent of the Association" and "Nothing shall be altered or constructed in or removed from the common elements except as constructed or altered by or with the permission of the Developer at any time before the first annual meeting of the Unit Owners without written consent of the Association."

¶ 16    Under the draft Declaration, the commercial units were not part of the Condo Association. But during the five-day attorney review period, Boryslavska asked her attorney to negotiate for Revite to be an Association member so that she could acquire a percentage ownership in

the common elements, which she believed would include rooftop rights. The Sellers agreed and modified the Declaration accordingly, granting the commercial units a percentage ownership in the common elements before recording it with the Cook County Recorder of Deeds on June 10, 2014. They did not record the Reciprocal Easement Agreement.

¶ 17    The sale of the residential unit closed in January 2015; the commercial units closed in March. A short time later, Boryslavska met with Jerry Kulas and one of his subcontractors to discuss installing a fence, but she decided to hire a different contractor. Construction was completed in early October 2015. At an October 15, 2015, meeting of the Condo Board, attended by the Zaparaniuks, a majority of the Board determined the area in front of the commercial units was part of the common elements under the Declaration. The Board sued Revite to remove the fence, as Revite hadn't first obtained its approval. *2424 Chicago Condominium Association v. Revite Corporation,* 2021 IL App (1st) 200906-U (affirming summary judgment for declaratory and injunctive relief mandating removal of fence).

¶ 18    After the closings, Boryslavska discovered construction defects in both the residential and commercial units, including, allegedly, building code violations. Boryslavska raised the defects at a February 24, 2016, Condo Board meeting attended by Michael. Swanberg later left voice mail messages for Michael that went unreturned. More than a year after the closings, Boryslavska gave written notice of the defects, sending Michael a letter with a copy by email.

¶ 19                                  Procedural History

¶ 20    Boryslavska filed a seven-count complaint against the Sellers to which she later added two more counts. Counts I and II alleged the Zaparaniuks and Vintage Realty breached their duties of honest dealing and full disclosure by failing to (i) disclose and obtain written consent for dual representation as required by section 15-40 of the Act (225 ILCS 454/15-45 (West 2022)

(Act))); (ii) make required disclosures under section 15-35 of the Act (225 ILCS 454/15-35 (West 2022)); and (iii) promote her best interests or exercise reasonable care in performing brokerage services in violation of section 15-15 of the Act (225 ILCS 454/15-15 (West 2022)).

¶ 21    Count I also alleged, in part, that the Zaparaniuks breached their duties by (i) falsely representing to Boryslavska that Revite could install a fence or failing to tell the Condo Board that the area in front of the commercial units belonged to Revite, (ii) failing to advise Boryslavska to bring an inspector to the final walk-through of the residential unit, and (iii) and inducing Boryslavska to buy the residential unit by falsely stating she would have roof rights.

¶ 22    Count III alleged Jerry Kulas breached his duties as a licensee under section 15-25(a) of the Act (225 ILCS 454/15-25(a) (West 2022) by failing to inform Revite it did not own the area in front of the commercial units and could not install a fence.

¶ 23    Counts IV and V alleged common law fraud against the Zaparaniuks and Vintage Realty and counts VI and VII alleged negligent misrepresentation against them for failing to disclose materials facts, which Boryslavska reasonably relied on to her detriment. Counts VIII and IX sought damages for breach of contract, alleging the commercial and residential units had numerous construction defects.

¶ 24    The Sellers filed a combined motion to dismiss under section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2022)). The trial court dismissed the fraud claims (counts IV and V) under section 2-615 without prejudice and denied the motion as to the remaining counts.

¶ 25    Boryslavska filed a second amended complaint, identical to the amended complaint, with an added count X, alleging the Sellers breached their contract with Revite by failing to execute and record the Reciprocal Easement Agreement. Specifically, Boryslavska alleged that because the Sellers failed to have the Reciprocal Easement Agreement signed and recorded

against the property, Revite was subject to arbitrary governance by the Condo Association, which sued Revite to remove the fence.

¶ 26        The Sellers again moved to dismiss. The trial court denied the motion as to counts I, II, VI, and VII and allowed the earlier dismissal of counts IV and V to stand. The remaining counts were dismissed: (i) count III for failing to allege Jerry Kulas was a broker or owed Boryslavska duties under the Act, (ii) counts VIII and IX, alleging building code violations because Boryslavska failed to notify the Sellers of defects within the one-year warranty period required by the limited warranty, and (iii) count X because Boryslavska negotiated for Revite's Condo Association membership and ownership of the common elements in place of the Reciprocal Easement Agreement and, thus, could not state a breach of the contract.

¶ 27        Eventually, the Sellers moved for summary judgment. The trial court granted the motion as to those parts of counts I and II that alleged failure to disclose dual agency and held that Boryslavska failed to identify damages resulting from non-disclosure of the relationship. Also, as to counts I and II, the trial court agreed with the Sellers that Michael's statements about installing a fence before Boryslavska asked him to act as her agent could not constitute violations of the Act.

¶ 28        Trial was set solely on the claims of misrepresentations on Boryslavska's roof rights for her residential unit. But, the parties settled, and the court dismissed those claims with prejudice.

¶ 29                                                    Analysis

¶ 30                                           Motion to Dismiss

¶ 31        The motion to dismiss was filed under Section 2-619.1 of the Code, which includes both section 2-615 and 2-619 grounds. *Henderson Square Condominium Ass'n v. LAB Townhomes, LLC*, 2015 IL 118139, ¶ 32. A section 2-615 motion attacks the legal sufficiency based on

defects apparent on its face. *Veazey v. Board of Education of Rich Township High School District 227*, 2016 IL App (1st) 151795, ¶ 32. A section 2-619 motion admits as true all well-pleaded facts, along with all reasonable inferences that can be gleaned from them, but asserts an affirmative defense or other matter that avoids or defeats the claim. *Id.* ¶ 23. Under both sections, we interpret the pleadings and supporting documents in the light most favorable to the nonmoving party. *Id.* at ¶32 and ¶ 23.

¶ 32    We review dismissal under sections 2-615 and 2-619 *de novo*. *Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill. 2 d 558, 579 (1997).

¶ 33                            Breach of Contract for Construction Defects

¶ 34    Boryslavska contends the trial court erred in dismissing counts VIII and IX of the second amended complaint, alleging breach of contract for construction defects. The trial court dismissed those counts under section 2-619, finding Boryslavska failed to notify the Sellers of the defects in writing within one year of the closing date as required by paragraph 6 of the limited warranty certificate.

¶ 35    Boryslavska contends the trial court erred because paragraphs 6 and 7 of the purchase agreements are separate from the limited warranty certificate, have no notice requirement, and required the Sellers to remedy a "punch list" of items in the commercial units and comply with "local building codes" in constructing the residential unit.

¶ 36    Boryslavska also contends the notice provisions in the limited warranty are conflicting because paragraph 3 requires defects to be "brought to the attention of the Seller within one year of closing" but does not mandate written notice. Conversely, paragraph 6 provides "any notice or claims to be made under this warranty shall be in writing and delivered to seller." Boryslavska argues she brought defects "to the attention of the Seller" within one year of

closing by raising them at a February 24, 2016, Condo Board meeting, which Michael Zaparaniuk attended and leaving voice mail messages for him. She asserts paragraph 6 does not apply to the defects she raised because they do not constitute a "claim." Boryslavska asserts that the limited warranty's paragraphs 3 and 6 are ambiguous, at best, and should be strictly construed against the drafter. See *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 479 (1998).

¶ 37    To the extent Boryslavska relies on paragraphs 6 and 7 of the purchase agreement to support her breach of contract claim, she waived those provisions once the sales of the units closed. As noted, the purchase agreements provide, "Making of final payment by Purchaser to Seller of the Purchase Price shall constitute a waiver and complete release of all claims by Purchaser against Seller with respect to the *** Unit and this Contract, except those which are expressly covered by the warranty hereafter provided or are expressly stated herein to survive the closing." After the closings, the limited warranty controlled.

¶ 38    We disagree that the notice provision in the limited warranty is ambiguous. Paragraph 3 provides the seller will remedy "any defect of workmanship and material brought to the attention of seller within one year of date of closing." Paragraph 6 states, "any notices or claims to be made under this warranty shall be in writing and delivered to seller." Boryslavska argues notice of a defect is not necessarily a "claim," so paragraph 6 doesn't apply. Yet, Paragraph 6 applies to claims and "any notices" made under the warranty. Thus, the "in writing" requirement applies to notice of a defect. Boryslavska acknowledges she did not provide written notice of the defects until over a year after the units closed.

¶ 39    The trial court did not err in dismissing her breach of contract claims in counts VIII and IX of the second amended complaint.

¶ 40                    Negligent Misrepresentation Regarding Revite's Roof Rights

¶ 41 Boryslavska contends the trial court erred in dismissing count VII, alleging negligent misrepresentation relating to Revite's roof rights. Boryslavska asserts Revite agreed to become a member of the Condo Association, in part, to obtain roof rights and did not discover until after the closing that the Sellers had recorded an amended Declaration depriving Revite of those rights. The trial court dismissed this claim under section 2-615 because "Revite does not plead that it was induced to buy the commercial property based on the roof rights, as the complaint focuses on Boryslavska's inducement to purchase a residential unit based on the representations of the roof rights."

¶ 42 The tort of negligent misrepresentation requires proof of "(1) a false statement of material fact, (2) carelessness or negligence in ascertaining the truth of the statement by the [speaker], (3) an intention to induce the other party to act, (4) action by the other party in reliance ***, and (5) damage to the other party resulting from such reliance, (6) when the party making the statement is under a duty to communicate accurate information." *Id.* Critically, "the reliance by the plaintiff must be justified, *i.e.,* [they] must have had a right to rely." *Kopley Group V., L.P. v. Sheridan Edgewater Properties*, 376 Ill. App. 3d 1006, 1018 (2007); see also *Neptuno Treuhand-Und Verwaltungsgesellschaft Mbh v. Arbor*, Z, 295 Ill. App. 3d 567, 575 (1998) ("no recovery for fraudulent misrepresentation, fraudulent concealment or negligent misrepresentation is possible unless plaintiffs can prove justifiable reliance, *i.e.*, that any reliance was reasonable").

¶ 43 Boryslavska's brief alleges, "Revite agreed to become part of the Condo Association in large part to obtain roof rights." She also alleges she told her attorney Revite would purchase the commercial units if Revite obtained ownership rights in the common elements of the Condo Association and, accordingly, had rights to the common areas of the building and rooftop

rights. The second amended complaint does not, however, allege the Sellers told her Revite would have roof rights. Instead, it alleges, "To induce Boryslavska to purchase Unit 201, Michael Zaparaniuk expressly told her that Unit 201 would have garage roof rights, roof rights, and a deeded parking space***." As the trial court noted, those allegations go to Michael's statements to induce Boryslavska to buy the residential unit but say nothing about statements he may have made to induce Revite to purchase the commercial units.

¶ 44    Absent allegations that Michael (or anyone else) made false statements to Boryslavska or Swanberg about Revite's right to use the roof area, we must affirm dismissal of count VII alleging negligent misrepresentation under section 2-615.

¶ 45                    Claim Against Jerry Kulas

¶ 46    Boryslavska contends the trial court erred in dismissing count III of the second amended complaint, alleging Jerry Kulas breached duties under section 15-25 of the Act (225 ILCS 454/15-25(a) (West 2022)) by not informing her that the area in front of the commercial units was part of the common elements and Revite could not install a fence without Condo Board approval.

¶ 47    Section 15-25(a) states, "Licensees shall treat all customers honestly and shall not negligently or knowingly give them false information. A licensee engaged by a seller client shall timely disclose to customers who are prospective buyers all latent material adverse facts pertaining to the physical condition of the property that are actually known by the licensee and that could not be discovered by a reasonably diligent inspection of the property by the customer." 225 ILCS 454/15-25(a) (West 2022).

¶ 48    In dismissing count III against Jerry Kulas under section 2-615, the trial court summarized the extent of Revite's and Jerry's relationship, stating (i) the second amended complaint made

no factual allegations suggesting Jerry was a broker or for any reason owed a duty under the Act, (ii) Jerry was not a part of the 2424 Chicago Condominium Association or on the Board, and (iii) while as president and secretary of the builder he agreed to build the fence, Revite retained a different contractor.

¶ 49        Boryslavska contends Jerry had a duty to disclose all material information about the transaction to Revite and disclose his financial interest in the property. For support, Boryslavska cites *Sawyer Realty Group, Inc. v. Jarvis Corp.,* 89 Ill. 2d 379, 386 (1982), which held that real estate brokers occupy a position of trust to the purchaser they represent and must "exercise good faith and disclose any personal interest they have in property they list for sale."

¶ 50        The Sellers contend that because the second amended complaint does not allege Jerry was a broker "with respect to this transaction," it fails to state a claim under section 15-25(a) of the Act. Boryslavska asserts that as a broker for Vintage Realty Jerry had duties under section 15-25(a) even if he wasn't the broker on this transaction.

¶ 51        If, as Boryslavska alleges, Kulas had duties to Revite under section 15-25(a) even if he was not the broker on this sale, the allegations involve conversations between Boryslavska and Jerry after the sale of the commercial units closed. Kulas would not have duties under the Act after the broker-customer relationship ceased. The trial court properly dismissed count III of the second amended complaint.

¶ 52                              Inspection of Residential Unit

¶ 53        Boryslavska argues the trial court erred in dismissing the claims in counts II and III, alleging the Zaparaniuks and Vintage Realty violated duties under section 15-15(a)(3) of the Act to "exercise reasonable skill and care in the performance of brokerage services" by not advising her to bring a licensed home inspector to the final walk through of the residential unit.

She asserts that when, as here, a broker acts as a dual agent, the broker "can *** [h]elp the buyer *** to arrange for property inspections." 225 ILCS 454/25-45(a)(6) (West 2022)).

¶ 54    In dismissing the allegation, the trial court noted that while before the residential unit's closing, Michael phoned Boryslavska and told her to have the inspection the same day but said nothing about her bringing an inspector, "this fails to state a claim for violation of the Act [because] Boryslavska does not allege Michael told her not to bring an inspector, indeed, she acknowledges he told her to have an inspection that day. The failure to advise to bring an inspector cannot be categorized as false information, which was material to Boryslavska's purchase which caused damages."

¶ 55    Boryslavska contends the trial court erred because she was not alleging Michael provided false information but rather failed to exercise reasonable skill and care as her real estate agent, as required by section 15-15(a)(3) and under section 25-45 of the Act, he "should" have helped her arrange for a property inspection. We disagree. As noted, section 25-45 provides that when acting as a dual agent, the broker "can" help the buyer arrange for an inspection. It does not require it. Moreover, the trial court found that Michael had told Boryslavska to have an inspection the same day but had not told her to bring the inspector. Boryslavska fails to explain how that advice violated duties under section 15-15(a)(3) to "exercise reasonable skill and care in the performance of brokerage services."

¶ 56                        Reciprocal Easement Agreement

¶ 57    The trial court dismissed count X, alleging breach of contract for the Sellers' failure to record the Reciprocal Easement Agreement on the grounds that Boryslavska and Revite "negotiated away" the duty to record. In short, the trial court found that on Revite's behalf,

Boryslavska negotiated for ownership rights in the common elements to take the place of the Reciprocal Easement Agreement, and thus, the Sellers did not breach the purchase agreement.

¶ 58     Boryslavska contends the trial court made impermissible fact findings in concluding the Sellers were released from their obligation to record the Reciprocal Easement Agreement due to her having negotiated for Revite to join the Condo Association. She further asserts that the trial court accepted the Sellers' argument without written evidence that she waived the Sellers' duty to record the Reciprocal Easement Agreement.

¶ 59     To plead a cause of action for breach of contract, a plaintiff must allege: (i) the existence of a valid and enforceable contract, (ii) substantial performance by the plaintiff, (iii) a breach by the defendant, and (iv) damages. *Gonzalzles v. American Express Credit Corp.*, 315 Ill. App. 3d 199, 206 (2000). Only a duty imposed by the terms of a contract can give rise to a breach. *Gallagher Corp. v. Russ*, 309 Ill. App. 3d 192, 199 (1999).

¶ 60     Boryslavska cites no authority imposing a duty on the Sellers to record the Reciprocal Easement Agreement and the purchase agreement does not provide that the Sellers must record. Under Section 28 of the Conveyances Act "Deeds, mortgages, powers of attorney, and other instruments relating to or affecting the title to real estate in this state, shall be recorded in the county in which such real estate is situated." In construing that provision, *Macon County, Illinois v. MERSCORP, Inc.*, 742 F. 3d 711, 714 (7th Cir. 2014), held the Conveyances Act does mandate recording of a mortgage or other real estate instruments. Boryslavska cited no cases holding otherwise. Absent a duty, Boryslavska cannot state a claim for breach of contract.

¶ 61                                   Summary Judgment

¶ 62     Summary judgment applies where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2022). The court construes the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in the opponent's favor. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004). Triable issues precluding summary judgment exist where material facts are disputed, or undisputed but reasonable persons might draw different inferences from them. *Id.* Courts grant summary judgment when the movant's right is clear and free from doubt. *Id.* We review the grant of summary judgment *de novo*. *Argonaut Midwest Insurance Co. v. Morales*, 2014 IL App (1st) 130745, ¶ 14.

¶ 63                                    Representations About Fence

¶ 64        Boryslavska contends the trial court erred in granting summary judgment on the portions of counts I and II alleging violations of sections 15-15, 15-35, and 15-45 of the Act by telling Boryslavska that Revite could install a fence. Sections 15-15 and 15-35 address a broker's duties to promote a client's best interests and disclose designated agents and other facts. Section 15-45 requires a licensee to obtain a client's informed consent to act as a dual agent.

¶ 65        The trial court found that none of these provisions applied; Boryslavska and Swanberg acknowledged in their depositions that Michael discussed the fence with them on May 7 and 9, 2014, before she asked Michael to act as her agent on May 10. Boryslavska did not allege Michael made statements about the fence after May 9. We agree. Sections 15-15, 15-35, and 15-45 apply to a relationship between a licensee and client, and Boryslavska has not alleged Michael made false statements about the fence after she became a client.

¶ 66        Notably, section 15-25 addresses duties a licensee owes a customer, "Licensees shall treat all customers honestly and shall not negligently or knowingly give them false information." Boryslavska first argued Michael violated section 15-25 in her response to the motion for

summary judgment and raises it again here. But she did not plead a violation of section 15-25 in the second amended complaint, and, as the trial court noted, first raised it in response to the summary judgment motion. See *Pagano v. Occidental Chemical Corp.*, 257 Ill. App. 3d 905, 911 (1994) (plaintiff's remedy "is to move to file an amended complaint before the summary judgment is granted under section 2-616(a) or after under section 2-1005(g)").

¶ 67    The second amended complaint did not plead that the Sellers violated section 15-25, and Boryslavska cannot now complain that the trial court improperly granted summary judgment because the evidence may support a theory of recovery she did not plead.

¶ 68    In granting summary judgment on count VII, alleging negligent misrepresentation for Michael's statements that Revite could install a fence, the trial court found Boryslavska's reliance on the statements when he first showed her the property was not reasonable. As the trial court explained, she later decided to install the fence because, in the interim, she had negotiated for Revite to join the Condo Association. As a result, Revite was subject to the Condominium Declaration, requiring Association consent to alter the common elements.

¶ 69    Boryslavska argues the reasonableness of her reliance presents a question of fact. For support, she relies on *Zimmerman v. Northfield Real Estate, Inc.,* 156 Ill. App. 3d 154, 167 (1986). In addition to holding that "the issue of reasonable reliance is a question of fact," that case also held that a court must consider the question "in light of all of the facts which plaintiffs had actual knowledge of as well as those which they might have discovered by the exercise of ordinary prudence." *Id*. Other courts have similarly held that "a party is not justified in relying on representations made when he [or she] has ample opportunity to ascertain the truth of the representations before he [or she] acts." *Kopley Group V., L.P*, 376 Ill. App. 3d at 1019 (quoting *Schmidt v. Landfield*, 20 Ill. 2d 89, 94 (1960). An individual afforded the opportunity

to know the truth of the representations is chargeable with knowledge; an individual who does not avail themselves of the means of knowledge open to them cannot say that misrepresentations deceived them. *Id*.

¶ 70    The Condominium Declaration, which the Sellers provided to Boryslavska months before the closing on the commercial units, precluded "construct[ion] in" or "alter[ation] of the Common Elements" before the Unit Owners' first annual meeting without written Association consent, and generally barred "obstruction of" the Common Elements. Article IX section (b) permitted the Commercial Unit owner to use "portions of the Common Elements" for "any lawful commercial purposes." Still, this permission was expressly conditioned on "the prior consent of the Board." The Declaration defined common elements to include Balconies/Terraces and "yard space."

¶ 71    As noted, to state a claim for negligent misrepresentation, a plaintiff must prove reliance on the defendant's statements was justified and reasonable. *Neptuno Treuhand-Und Verwaltungsgesellschaft Mbh* v. Arbor, 295 Ill. App. 3d 567, 575 (1998) ("no recovery for *** negligent misrepresentation is possible unless plaintiffs can prove justifiable reliance, *i.e*., that any reliance was reasonable"). Reliance on statements Michael made during negotiations that Revite could install a fence was not reasonable after Boryslavska negotiated for Revite to join the Association and become subject to its declaration, which required the Board's approval. We affirm summary judgment on the negligent misrepresentation allegations.

¶ 72    Affirmed.